## Charles Parker v. The People, etc.

1. EVIDENCE—*Of General Reputation in Prosecutions under Section 57 of the Criminal Code.—Keeping Houses of Ill-Fame.*—Evidence of the general reputation of a house, the keeper of which is charged with keeping a house of ill fame, which is based upon mere hearsay, is inadmissible as tending to establish the guilt of the accused.

2. SAME—*Competency of Events Occurring Prior to the Time Covered by the Indictment.*—In a prosecution for keeping a house of ill-fame under section 57 of the criminal code, proof of events occurring in the house prior to the time covered by the indictment, is competent.

3. SAME—*Reasons for Not Calling a Witness, Admissible.*—Where a party fails to call a person whom he naturally would call as a witness, and where the failure to call him is likely to create in the minds of the jury an inference that such witness is not called because his testimony would be unfavorable to the party, such party is entitled to show his inability to produce the witness by proof that he is dead, or that his whereabouts are unknown, or, in a criminal case, that such witness has gone where process can not be served to compel his attendance, as his reasons for not calling such witness.

**Indictment for Keeping House of Ill-Fame.**—Error to the County Court of Rock Island County; the Hon. LUCIAN ADAMS, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed April 11, 1901.

SAMUEL R. KENWORTHY, attorney for plaintiff in error.

C. J. SEARLE, State's Attorney, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On June 5, 1900, plaintiff in error was indicted in the Circuit Court of Rock Island County, under section No. 57 of the criminal code. There were two counts in the indictment. The first was for keeping a house of ill-fame, and the second charged that he "a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication and other misbehavior, did then and there unlawfully keep and maintain."

The case was certified to the County Court, where it was tried at the July term, 1900. The jury found Parker guilty, under the second count.

Motions for a new trial and in arrest of judgment were

overruled, exceptions taken, and judgment rendered against him for a fine of $50 and costs.

It appears from the proofs that the plaintiff in error, at the time in question, kept a saloon in the city of Rock Island, the front part of which was partitioned off from the back by a wooden partition, which extended part way to the ceiling; the back part was divided in a like manner into six small rooms, three on each side of a hallway that led back to a door. Four of these rooms were each furnished with a wooden table and chairs, but were not otherwise furnished, and were called by the witnesses " wine rooms " or " stalls." Two bartenders, a porter, and a musician who played a piano in the front part of the saloon, were employed by the proprietor, and the place was frequented by a general class of drinking people, male and female. German, who was acting as a detective to obtain evidence against Parker and other saloon keepers, testified that on June 3, 1900, two days before the indictment was returned, he visited Parker's saloon, and met a woman in the wine room, with whom he had beer, and who solicited him to sexual intercourse, and he refused. McClanahan, who boarded with German, testified to having seen women in the defendant's saloon several times during the period covered by the indictment, who asked him to spend a dollar with them; he first testified that they were prostitutes, and then that he did not know whether they were or not. This was all the direct proof that defendant had committed the offense charged, during eighteen months preceding the return of the indictment. There was no proof of any act of prostitution within his premises.

The prosecution was permitted, over defendant's objections, to prove the reputation of the house; and the court refused to confine this to proof of the general reputation, but permitted witnesses for the people to testify in chief that they had heard it was a resort for women; that they had heard that Parker kept a house of ill-fame; that they had heard people say it was the toughest place in town, etc. Cross-examination showed that some of these wit-

nesses spoke only of a period more than eighteen months before the indictment was found, and the court refused to exclude this proof of what people had said more than eighteen months before the return of the indictment. Some proof was made of the presence of dissolute women in the saloon more than two years before the indictment was returned, and this proof the court refused to exclude.

It does not appear that the question of the competency of proof of the general reputation of the house has ever been decided by any court of appeal in this state. The authorities in several States are apparently in conflict. It is stated in 2 Bishop's Crim. Pro., Sec. 113, and 9 Amer. and Eng. Ency. of L., 2d Ed. 531–533, that the greater weight of authority is apparently against the admissibility of such proof. It was so held in State v. Boardman, 64 Me. 523; Henson v. State, 62 Md. 231; Wooster v. State, 55 Ala. 217; Sparks v. State, 59 Ala. 82; Toney v. State, 60 Ala. 97; Handy v. State, 63 Miss. 207; U. S. v. Jourdine, 4 Cranch C. C. 358; and in State v. Lyon, 39 Ia. 379. It appears that after the decision in the case last cited a statute was adopted in Iowa permitting the State, upon the trial of any person indicted for keeping a house of ill-fame, to introduce evidence of the general reputation of the house so kept, and making such proof competent; and under that statute proof of the general reputation of the house was held competent in State v. Lee, 80 Ia. 75. In Connecticut the statute prohibited "keeping a house of ill-fame, resorted to for the purpose of prostitution or lewdness." It was held in Cadwell v. State, 17 Conn. 467, that in a prosecution under that statute the State must prove both that the house was of general ill reputation and commonly believed to be a brothel, and also that it actually was such. It was there conceded, proof of the general reputation of the house would be inadmissible to establish that in fact it was a brothel, as that would be mere hearsay; but such testimony was held competent under their statute because, as the court considered it, the reputation must be shown. In most of the States where evidence of the general reputa-

Parker v. The People.

tion of the house is admitted, it will be found either that their statute resembles that of Connecticut or that they have a statute making such evidence competent, or that such courts are led, by the use of the word "ill-fame" in the statutory definition of the crime, to conclude the repute of the house is either the whole or a part of the offense. The leading authorities, *pro* and *con* are collected in a note to the second edition of the American and English Encyclopedia of Law, where above cited.

In our statute the offense is thus stated: "Whoever keeps or maintains a house of ill-fame or place for the practice of prostitution or lewdness." These words do not state two offenses, the first keeping a house whose reputation is bad, and the second keeping a place for the practice of prostitution. The second clause explains and defines the first, and the only offense is keeping or maintaining a house for the practice of prostitution. The general ill reputation of the house is no part of the crime. We are of opinion the ordinary rules of law ought to prevail in trials for this as for any other criminal offense, and that evidence so plainly based upon mere hearsay ought not to be received as tending to establish guilt. In this connection we approve the views expressed in Henson v. State, and in Wooster v. State, *supra.*

Although this evidence was introduced mainly under the first count of the indictment, upon which count defendant was acquitted, yet it could not fail to have influenced the action of the jury in considering the charge contained in the second count upon which he was found guilty.

We are also of opinion that it must be regarded as settled by the authorities that the proof of events occurring in this saloon while kept by defendant prior to the time covered by the indictment, was competent. This doctrine is fully set forth in several of the authorities above cited. The theory upon which it is admitted is thus illustrated and stated in Cadwell v. State, *supra :*

"If a house should be fitted up by the occupier for the purpose of a school, and young persons should resort there for a considerable period, for the purpose of being instructed

by him, would not the fact that the same persons, and those of similar character, subsequently resorted to the same building, conduce to prove that a school was continued there? So, in the present case, we think that the circumstances that certain persons of lewd and dissolute character had, before the time in question, been permitted by the accused, habitually to resort to his house for the purpose of prostitution, furnished a legitimate ground to infer, that when it was subsequently allowed to be resorted to, by the same persons and those of a similar character, it was for the same purpose. The testimony being relevant to prove a material fact in the case, was properly received."

At the time testified to by the witness German, defendant was absent all day, and the barkeeper was the one who was present, and who could have contradicted German, if his testimony was untrue. Defendant did not call the barkeeper, but sought to prove he had left the State and could not be produced. The court refused to permit this proof. We are of opinion that where a party to a suit fails to call a person whom he naturally would call as a witness, and where the failure to call him is likely to create in the minds of the jury an inference that he is not called because his testimony would be unfavorable to such party, the latter is entitled to show his inability to produce the witness by proof that he is dead, or that his whereabouts are unknown, or, in a criminal case, that he has gone where process can not be served to compel his attendance. Mantonya v. Reilly, 83 Ill. App. 275; Rector v. Rector, 3 Gilm. 105; Underhill on Ev., p. 16; 1 Greenleaf on Ev., Sec. 37.

For the errors above mentioned the judgment is reversed and the cause remanded for another trial. Reversed and remanded.