STATE OF IOWA, Appellee, v. MRS. FRED LEWIS, Appellant.

No. 44065.

JANUARY 17, 1939.

REHEARING DENIED MAY 12, 1939.

Edward Robinson, for appellant.

John H. Mitchell, Attorney General, Buell McCash, Spec. Asst. Attorney General, and R. A. Knudson, County Attorney, for appellee.

OLIVER, J.—For some years prior to September 15, 1937, the date named in the indictment, the defendant had operated, at Fort Dodge, Iowa, a rooming and boarding house known as the Oxford, in which she resided with her husband, who was a concession man at fairs and carnivals and lived with defendant

in the premises during the times he was not so engaged. In addition to the rooms occupied by them there were a sitting room, a lounge room and two bedrooms on the first floor, and about six bedrooms on the second floor.

The evidence for the state was to the effect that at the time fixed in the indictment the reputation of the house in the neighborhood was that of a house of prostitution and that the general reputation of the defendant and her husband for chastity was bad; that the house was frequently visited by a number of women generally reputed to be prostitutes and by men whose general reputation for chastity and for moral character was bad; that upon one police raid at which defendant, her husband and other occupants of the place were arrested, one of these visiting women was found in bed with a gentleman from out of town; that the defendant sold liquor, and that most of the men coming out of the house appeared to be under the influence of liquor; that the defendant employed Kathryn May Ellis, a girl who described herself as a prostitute, to ply her vocation in the premises upon a split fee basis which defendant told this "girl" was the amount "they" charged in addition to room and board; that this girl "worked" as a prostitute for defendant for a few days, making her agreed payments, and that during those few days there was no other girl there "steady", but that a "girl" named Billie came as Kathryn Ellis left.

Defendant testified that she made her living by having roomers and boarders; that the people arrested at her house were roomers and boarders and their friends; that when they were taken to jail after a raid upon the house they were not charged with operating a house of ill fame, but that it was some kind of a liquor charge and that defendant had never in her life seen Kathryn May Ellis, the prostitute who claimed to have "worked" in the Oxford at said occupation for defendant. The other evidence by witnesses for defendant was largely directed to the impeachment of Kathryn May Ellis and the rebuttal of her evidence.

I.   Over appropriate objections and exceptions the trial court permitted various witnesses, during the case in chief for the state, to testify that in the community at the time in question the general reputation of the accused for chastity was bad. It is urged by appellant that her reputation as to chastity was not an issue in her trial upon a charge of keeping a house of ill

fame, especially when appellant had not placed her reputation in issue and the state had made this issue as a part of its evidence in chief, and that the admission of this evidence violated the principle of criminal law that the character of a defendant cannot be impeached or attacked by the state unless he first puts his character in issue. The state contends that, since defendant resided on the premises and was herself an inmate of the dwelling described in the indictment, such evidence was properly admitted under the rule that the bad reputation for chastity of the inmates of a house and those who resort thereto may be proven as bearing upon the question of whether or not the house is, in fact, one of ill fame. Authorities from various jurisdictions are cited in support of these conflicting propositions.

The case of State v. Hull, 18 R. I. 207, 26 A. 191, 20 L. R. A. 609, and City of St. Paul v. Harris, 150 Minn. 170, 184 N. W. 840, appear to sustain appellant's contention. The Court of Criminal Appeals of Texas held in Gamel v. State, 21 Tex. App. 357, 17 S. W. 158, that such evidence was inadmissible. Later the Texas court, in Dailey v. State, Tex. Crim. App., 55 S. W. 823, held such testimony was proper, while in the later case of Adams v. State, 126 Tex. Cr. R. 492, 72 S. W. 2d 912, the same court observed that the defendant did not live in the houses in question, that the opinion in the Dailey case did not show whether or not the accused was an inmate of the house and that the decision in the Gamel case was controlling under such circumstances. Appellate courts of various states in the following cases have held such evidence to be admissible against a defendant residing on the premises in question. Sparks v. State, 59 Ala. 82; Batesville v. Smythe, 138 Ark. 276, 211 S. W. 140; Howard v. People, 27 Colo. 396, 61 P. 595; Whitlock v. State, 4 Ind. App. 432, 30 N. E. 934; Betts v. State, 93 Ind. 375; Schultz v. State, 200 Ind. 1, 161 N. E. 5; State v. Mack, 41 La. Ann. 1079, 6 So. 808; State v. Price, 115 Mo. App. 656, 92 S. W. 174; State v. Flick, Mo. App., 198 S. W. 1134; State v. Hendricks, 15 Mont. 194, 39 P. 93, 48 Am. St. Rep. 666; State v. McDowell, S. C. 1 Dudley 346; The Pastime v. State, 138 Tenn. 315, 197 S. W. 1089; State v. Brunell, 29 Wis. 435. It is, therefore, apparent that the weight of authority permits the introduction of such evidence.

The Iowa authorities now definitely agree that evidence of the reputation of the inmates in and resorters to an alleged house

of ill fame is admissible as bearing upon the character of the house. State v. Lyon, 39 Iowa 379; State v. Lee, 80 Iowa 75, 45 N. W. 545, 20 Am. St. Rep. 401; State v. Beebe, 115 Iowa 128, 88 N. W. 358; State v. Burns, 145 Iowa 588, 124 N. W. 600; State v. Gilliland, 187 Iowa 794, 174 N. W. 496. This established rule is mentioned at this point in connection with the discussion of State v. Hand, 7 Iowa 411, 71 Am. Dec. 453, which was cited by the Rhode Island court in the Hull case, supra, in support of that decision.

A careful examination of the Hand case discloses that the basis of its decision was not the erroneous admission of evidence but an erroneous instruction as to the proof necessary to convict. The holding of the court was that "the defendant cannot be made liable, as the keeper of such a house, by evidence of 'common reputation as to his character.' * * * "

"The *bad character* of the prisoner is entirely *immaterial, in the first instance, in determining whether he was the keeper* of the house. And that he was the keeper, must be shown in order to convict." (Italics ours.)

So far the case patently holds only that evidence that an accused is of bad character does not tend to prove that he was the keeper of a certain alleged house of ill fame, and that such proof is necessary before he may be convicted. Continuing, the court said:

"If the charge was against the house, then its fame—ill-fame—might be shown, by proving, among other things, the character of the persons, (the defendant among others), resorting there from time to time."

As we have already observed it is now the established rule in Iowa that the bad reputation for chastity of an inmate of or a resorter to a house may be shown in the trial of a charge against the *keeper* of such place as a house of ill fame. Again continuing the quotation from the Hand case:

" * * * the jury may conclude that he was such keeper, by proof that he acted as such, or so held himself out to the world. Common reputation as to his character, however, is quite a different thing, and is not admissible to prove the crime here charged."

This is the same thought expressed earlier in the case, viz., that common reputation of the character of the accused does not tend to prove that he was the keeper of the house and is not admissible for that purpose. As expressed in State v. Donneker, 40 Iowa 340, which cites the Hand case, ''rumor or repute was not sufficient to show that the defendant was the keeper of the house.'' The Hand case does not hold evidence of the reputation of an inmate of a house of ill fame, otherwise competent, is rendered improper solely because such inmate happens to be defendant on trial in the case. It neither discusses nor mentions such proposition. That certain other jurisdictions may have erroneously construed the Hand case as so holding cannot affect the rule in Iowa since no such construction has been placed upon it by this court.

State v. Lyon, 39 Iowa 379, holds that evidence of the general reputation of the inmates of the house was admissible and says:

''It was competent for the State to prove the bad character of the house by evidence of the bad character of the persons resorting thereto, and of the inmates thereof. The State v. Hand, 7 Iowa 411 [71 Am. Dec. 453] ; and, therefore, the court erred in excluding evidence of the general character of the inmates of the house described in the indictment.''

State v. Beebe, 115 Iowa 128, loc. cit. 131, 88 N. W. 358, loc. cit. 360, also cites the Hand case and says:

''Whether or not evidence as to the character of the keeper is admissible is a question upon which the authorities are not agreed. See cases cited in 9 Enc. Pl. & Prac. pp. 534, 535, and cases cited. In State v. Hand, 7 Iowa 411, 71 Am. Dec. 453, we held that such evidence is not admissible for the purpose of showing defendant was guilty of the crime. Without at this time committing ourselves, it is sufficient to say that the weight of authority seems to favor the admission of such evidence as tending to show the character of the house.''

From the foregoing it plainly appears that the Hand case may not be regarded as authority for the rule contended by appellant. The decisions of this court furnish no support for such doctrine. We agree with the statement made in the Beebe case that the weight of authority is otherwise. Therefore, we hold

that the trial court did not err in admitting the evidence in question.

II. Appellant complains of instructions No. 10, referring to evidence of the general reputation of the house, and No. 11, referring to evidence of the reputations of resorters to said house. We have carefully studied these instructions and find that, when taken in connection with all the instructions and bearing in mind the failure of appellant to request further instructions, the objections raised to them by appellant are not well founded.

On the whole record we find no reversible error and it appears that the appellant had a fair and impartial trial and that the proof of her guilt was ample. Therefore, the judgment and rulings of the trial court are affirmed.—Affirmed.

RICHARDS, HAMILTON, STIGER, SAGER, BLISS, MILLER, and HALE, JJ., concur.