PEOPLE *v.* LEE.

1. DISORDERLY HOUSE—ESSENTIAL ELEMENTS OF CRIME OF KEEPING
   HOUSE OF ILL FAME.

   The essential elements of the statutory offense of keeping a
   house of ill fame are (1) that the place in question was
   a house of ill fame, (2) that the defendant kept or aided in
   the keeping of the house, and (3) that it was resorted to for
   the purpose of prostitution and lewdness (Act No. 328, § 452,
   Pub. Acts 1931).

2. SAME—KEEPING A HOUSE OF ILL FAME—EVIDENCE—ADMISSIONS.

   That a defendant kept or aided in the keeping of a house of ill
   fame is proved by defendant's concession that she was renting
   the place (Act No. 328, § 452, Pub. Acts 1931).

3. SAME—HOUSE OF ILL FAME—EVIDENCE—REPUTATION.

   That a place was a house of ill fame may be proved by showing
   its reputation (Act No. 328, § 452, Pub. Acts 1931).

4. SAME—RESORTING TO PLACE FOR PROSTITUTION AND LEWDNESS—
   EVIDENCE.

   That a place was resorted to for the purpose of prostitution and
   lewdness may be shown by the testimony of persons having
   knowledge of the fact (Act No. 328, § 452, Pub. Acts 1931).

5. SAME—REPUTATION—EVIDENCE—POLICE OFFICERS.

   Testimony of policeman who patrolled neighborhood for upwards
   of 15 years that place in question had the reputation of being
   a house of ill fame and like testimony of a detective sergeant
   was sufficient to establish reputation of place involved in
   prosecution for operating a house of ill fame (Act No. 328,
   § 452, Pub. Acts 1931).

6. SAME—HOUSE OF ILL FAME—RESORT TO PLACE FOR PROSTITUTION
   —EVIDENCE.

   To show that a house was resorted to for the purpose of
   prostitution it is not necessary to show actual illicit inter-
   course but it is sufficient to show that the inmates are pros-
   titutes and that men frequented and resorted to the place at
   night.

7. SAME—OPERATING HOUSE OF ILL FAME—PRELIMINARY EXAMI-
NATION—SUFFICIENCY OF EVIDENCE.

Testimony of two police officers as to what they saw when they
visited premises involved, given at preliminary examination,
*held*, ample evidence that place was resorted to for purposes
of prostitution so as to require that defendant be held for
trial on charge of operating a house of ill fame (Act No. 328,
§ 452, Pub. Acts 1931).

8. INDICTMENT AND INFORMATION—AMENDMENT—DATE—TIME.

It is proper to permit an amendment of a date in an informa-
tion when time is not of the essence of the offense (3 Comp.
Laws 1929, §§ 17265, 17290).

9. SAME—AMENDMENT AS TO DATE—OPERATING HOUSE OF ILL FAME.

In prosecution for operating a house of ill fame wherein in-
formation as originally filed was confined to two days in July,
amended information extending period covered upwards of
three years and a half did not thereby introduce a new or
different charge and did not require a new examination or
rearraignment (3 Comp. Laws 1929, §§ 17265, 17290; Act
No. 328, § 452, Pub. Acts 1931).

10. SAME—FILING—PRELIMINARY EXAMINATION—WAIVER.

No information may be filed against any person for any offense,
until such person shall have had a preliminary examination
therefor as provided by law, or shall have waived such exam-
ination.

11. SAME—INDORSEMENT OF NAMES OF NEW WITNESSES ON AMENDED
INFORMATION BEFORE TRIAL.

Where trial in prosecution for operating a house of ill fame
began about 21 days after filing of amended information on
which were indorsed the names of five new witnesses, court
was not in error in permitting indorsement of names of such
new witnesses (3 Comp. Laws 1929, § 17254; Act No. 328,
§ 452, Pub. Acts 1931).

12. SAME—INDORSEMENT OF NAMES—CORRECTION DURING TRIAL—
DISCRETION OF COURT.

In prosecution for operating a house of ill fame where a police
officer at the preliminary examination had referred to a man
who lived next door to the place as "Charlie" and name
"Charles" was indorsed as given name on information, trial
court's action in permitting correction of such name to
"Harry" upon information when error was discovered at the
trial was not prejudicial or surprising to defendant who did
not request a continuance (3 Comp. Laws 1929, § 17254; Act
No. 328, § 452, Pub. Acts 1931).

13. Same—Indorsement of Names—Discretion of Court—Protection of Accused.

The discretion of the trial judge in the indorsement of witnesses upon an information during the course of ·the trial must be exercised with due regard to the protection of the right of the accused to prepare a defense and be accorded a fair trial and any claimed error in such respect will be reviewed upon the showing made in the light of the circumstances (3 Comp. Laws 1929, § 17254).

14. Same—Indorsement of Names—Inadvertent , Omission—Continuance.

An omission to indorse names of witnesses on an information through inadvertence or oversight does not prevent the indorsement of their names thereafter and where no continuance was asked the trial court properly assumed one was not desired (3 Comp. Laws 1929, § 17254).

15. Same—Indorsement of Names—Statutes—Prosecuting Attorney.

The right of a defendant to know the witnesses to be called against him is a substantial one and the statutory requirement as to indorsement of names should be faithfully observed by the prosecuting attorney (3 Comp. Laws 1929, § 17254).

16. Criminal Law—Operating House of Ill Fame—Evidence—Competency—Impeachment.

In prosecution for operating a house of ill fame, trial court did not commit error in allowing prosecuting attorney to subpoena women who were found in the house at the time of the raid and then attempt to prove by police officers that such women were prostitutes since the testimony of the officers was not offered for purposes of impeachment and was competent for purpose of showing the place was resorted to for purposes of prostitution, one of the essential elements of the crime charged (Act No. 328, § 452, Pub. Acts 1931).

17. Witnesses—Impeachment—Contradiction of Party's Own Witness.

While a party may not impeach his own witness, proving the truth of material facts by other testimony is proper even though the effect thereof is directly contradictory of the testimony of his own witnesses.

18. Disorderly House—Character of Keeper—Competency of Evidence.

Evidence as to the character of a keeper of a house of ill fame is admissible in prosecution for operating such a house as tending to show the character of the house (Act No. 328, § 452, Pub. Acts 1931).

19. SAME—REPUTATION OF KEEPER AND INMATES.

While the general rule is that the guilt of a person accused of crime cannot be established by proof of general reputation, proof of the reputation of the keeper and inmates of a house of ill fame is admissible in a prosecution for operating a house of ill fame (Act No. 328, § 452, Pub. Acts 1931).

20. SAME—REPUTATION OF KEEPER.

In prosecution for operating a house of ill fame, court did not err in overruling objection to question as to whether witness was familiar with the reputation of defendant during period covered by amended information on ground of immateriality where reputation was material notwithstanding limitation was not put upon query by way of confining it to the vicinity or to the general reputation of defendant (Act No. 328, § 452, Pub. Acts 1931).

21. SAME—OPERATING HOUSE OF ILL FAME—REPUTATION.

Testimony of witnesses in prosecution for operating a house of ill fame that their knowledge of defendant and her place was gathered from the general reputation in the vicinity *held*, not to have constituted prejudicial error although questions may not have been artfully phrased (3 Comp. Laws 1929, § 17354; Act No. 328, § 452, Pub. Acts 1931).

22. SAME—VERDICT—SUFFICIENCY OF EVIDENCE.

In prosecution for operating a house of ill fame, verdict of guilty was supported by evidence, hence trial court did not err in refusing to direct verdict for defendant and in denying new trial because evidence was insufficient (Act No. 328, § 452, Pub. Acts 1931).

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted October 15, 1943. (Docket No. 92, Calendar No. 42,279.) Decided December 29, 1943.

Hattie Lee was convicted of keeping a house of ill fame. Affirmed.

*F. E. Wetmore,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, and *Henry L. Beers,* Prosecuting Attorney, for the people.

BUSHNELL, J. Defendant Hattie Lee was arrested, arraigned and examined on a warrant which charged that "between July 17, 1942, and July 18, 1942," she "feloniously did keep, maintain or operate a house of ill fame," which was "resorted to for the purpose of prostitution and lewdness." Following her examination, an information was drawn in the same terms. A motion to quash this information was denied and immediately thereafter the people were allowed to file an amended information, which charged the same offense "between the 1st day of January, 1939, and the 18th day of July, 1942." Defendant then filed another motion to quash on the added ground that the warrant charged an offense on the 17th and 18th days of July, 1942, and that the examination covered these days only and not the period embraced in the amended information. This motion was also denied. Defendant has appealed from the sentence imposed by the court after the jury found her guilty.

Defendant contends that the evidence introduced before the examining magistrate was not sufficient to hold her for trial. The essential elements of the statutory offense (Michigan penal code, Act No. 328, § 452, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–452, Stat. Ann. § 28.707]), of keeping a house of ill fame are: (1) That the place in question was a house of ill fame; (2) That the defendant kept or aided in the keeping of the house, and, (3) That it was resorted to for the purpose of prostitution and lewdness. *People* v. *Gastro,* 75 Mich. 127; *People* v. *Russell,* 110 Mich. 46; *People* v. *Wheeler,* 142 Mich. 212; and 2 Gillespie's Michigan Criminal Law & Procedure, § 1725.

The second element of the offense is satisfied by defendant's concession that she was renting the place. That the place was a house of ill fame may

be proved by showing its reputation; that it was resorted to for the purposes named may be shown by the testimony of persons having knowledge of this fact. *O'Brien* v. *People,* 28 Mich. 213.

James Gilmour, a member of the police force of the city of Muskegon, testified that he had patrolled the neighborhood on and off for about 15½ years, and that the place had the reputation of being a house of ill fame. Peter Rechlitz, a detective sergeant, also testified to the same effect. This was sufficient to satisfy the requirement regarding the reputation of the house in question.

"In order to sustain a conviction it is not necessary to show actual illicit intercourse. If it is shown that the inmates are prostitutes, and that men frequented and resorted to the place at night, evidence of these and kindred facts may be sufficient to satisfy a jury that the house was resorted to for the purpose of prostitution." 2 Gillespie's Michigan Criminal Law & Procedure, § 1725.

See, also, *People* v. *Martin,* 176 Mich. 381.

At the preliminary examination two officers of the Michigan State police testified that they visited the premises on July 17 and 18, 1942. Their testimony as to what they observed while in the house was sufficient to establish that the place was resorted to for the purpose of prostitution, and there was ample evidence produced before the examining magistrate to require that the defendant be held for trial. See *People* v. *Dellabonda,* 265 Mich. 486.

Defendant contends that the trial judge committed error in allowing the prosecutor to file an amended information "changing the charge" so that it extended back over a period of three years when the examination was confined to specific dates. It is proper to permit an amendment of a date in an

information when time is not of the essence of the offense.*    *People* v. *Clum,* 213 Mich. 651 (15 A. L. R. 253), and *People* v. *Vanderjagt,* 235 Mich. 620. The amended information did not introduce a new or different charge and there was no occasion for a new examination or a rearraignment.    *People* v. *Sims,* 257 Mich. 478.

Defendant quotes from *People* v. *Dochstader,* 274 Mich. 238, 244, as follows:

"No information may be filed against any person for any offense, until such person shall have had a preliminary examination therefor as provided by law, or shall have waived such examination."

This is a correct statement of the law, but it is not applicable to the facts of the instant case.

Defendant further argues that the court erred in permitting the prosecutor to file an amended information containing the names of five new witnesses, and to correct the name of one witness thereon during the trial.

The statute (3 Comp. Laws 1929, § 17254 [Stat. Ann. § 28.980]) provides that: "Names of other witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine." The trial began about 21 days after the amended information was filed. The court did not err in permitting names of five new witnesses to be indorsed on the information. *People* v. *Williams,* 118 Mich. 692; *People* v. *La-Panne,* 255 Mich. 38; *People* v. *McCrea,* 303 Mich. 213, 271–275; and *People* v. *Costanza,* 306 Mich. 415.

During the trial, one Knapp was called to the stand. His name had been indorsed on the information as Charles Knapp; it was discovered that his

* See 3 Comp. Laws 1929, §§ 17265, 17290 (Stat. Ann. §§ 28.991, 28.1016).—Reporter.

correct name was "Harry" Knapp, and the court permitted the prosecutor to correct this name on the information. At the preliminary examination, officer Gilmour referred to "Mr. Charlie Knapp, who lives at the corner of Hall and East Western Avenue." As a matter of fact, Harry Knapp lived at this location, "right next door to the residence of Hattie Lee." This action was within the discretion of the trial judge. It is fundamental that such discretion must be exercised with due regard to the protection of the right of the accused to prepare a defense and be accorded a fair trial. Any claimed error in this respect is to be reviewed upon the showing made in the light of the circumstances. *People* v. *Blue,* 255 Mich. 675. An omission of names of witnesses through inadvertence or oversight does not prevent the indorsement of their names thereafter. *People* v. *Mills,* 94 Mich. 630.

In the instant case, we are satisfied that the people made a proper showing of mistake; that the defendant was not prejudiced by the action of the court, and that such action was not error. Nor did the court abuse its discretion in permitting Harry Knapp to testify. The defendant did not request a continuance and, in the absence of such a request, the trial judge properly assumed that a continuance was not desired. *People* v. *Ranney,* 153 Mich. 293 (19 L. R. A. [N. S.] 443).

We are not unmindful of the rule laid down in *People* v. *Tamosaitis,* 244 Mich. 258, that:

"The right of the defendant to know the witnesses to be called against him is a substantial one, and the statutory requirement should be faithfully observed by the prosecuting attorney."

However, under the facts of the case now under consideration, we are satisfied that the defendant

was not surprised or prejudiced by the action of the court.

Defendant complains that the court erred in allowing the prosecutor to subpoena certain women and then attempt to prove by police officers that these women were prostitutes. All of these women were in the house at the time of the raid and, as stated in *People* v. *Russell, supra,* 48:

"It was competent to show that one of the inmates of the house was a female who had borne the reputation of being a common prostitute."

This matter was considered in *People* v. *Tomczak,* 250 Mich. 679, where one of the defendant's witnesses was impeached and such impeachment testimony was objected to. The court said in that case:

"The point is well taken if limited to impeachment, but without merit when considered upon the subject of the character of the house in which she lived."

1 Wigmore on Evidence (3d Ed.), p. 509, § 78, reads:

"A house of ill fame, or disorderly or bawdy house, signifies a house commonly resorted to or lived in by prostitutes for purposes of prostitution; thus, one element in the offense of keeping it may be the kind of persons resorting to or living in it. Now it is usually understood by courts that this element of the crime involves, not merely the actual but also the reputed character of these persons as prostitutes; in which case their reputed character becomes a fact in issue; and this is the general result of the precedents."

This testimony was not offered for purposes of impeachment of other witnesses, but rather for the purpose of establishing the material fact of the rep-

utation of the persons resorting to or living in the house in question. The rule against impeaching one's own witnesses does not mean that the party is bound to accept such testimony as correct. He may prove the truth of material facts by other testimony, even though the effect thereof is directly to contradict the testimony of his own witnesses.

As was said in *Darling* v. *Thompson,* 108 Mich. 215, 218:

"We think counsel have overlooked the distinction between a contradiction and an impeachment. A party cannot impeach his own witness, but he may contradict him; for, if it were otherwise, he would be at the mercy of his first witness. A moment's reflection will show the far-reaching effect of the rule contended for."

*Smith* v. *Smith, Sturgeon & Co.,* 125 Mich. 234, 238; *Ritchie* v. *Reo Sales Corp.,* 272 Mich. 684, 688; see, also, *People* v. *Elco,* 131 Mich. 519, 527.

It is also contended that it was improper to inquire into the reputation of the defendant, although she lived in the house in question. Evidence as to the character of a keeper of a house of ill fame is admissible as tending to show the character of the house. See *State* v. *Lewis,* 226 Iowa, 98 (283 N. W. 424); *Schultz* v. *State,* 200 Ind. 1 (161 N. E. 5); *State* v. *Flick* (Mo. App.), 198 S. W. 1134; *Howard* v. *People,* 27 Col. 396 (61 Pac. 595); *Dailey* v. *State* (Tex. Crim.), 55 S. W. 823; and *People* v. *Saunders,* 29 Mich. 269.

As stated in *Batesville* v. *Smythe,* 138 Ark. 276 (211 S. W. 140):

"There is a conflict in the authorities as to the admissibility of proof of the reputation of the accused person, the same as other inmates of a house of prostitution; but we think the weight of authority

sustains the view that such proof is competent. The universally conceded rule is that guilt of a person accused of crime cannot be established by proof of general reputation; but an exception to that rule, or rather an instance of nonapplication of the rule, is that the character of a house may be established by the reputation of its inmates and frequenters, and this applies to the proof of reputation of the accused person as an inmate of the house.''

See, contra, *State* v. *Hull,* 18 R. I. 207 (26 Atl. 191, 20 L. R. A. 609), and authorities therein annotated.

Defendant also argues that the court erred in overruling her objection to a question put to witness Gilmour. The question was:

''*Q.* Are you familiar with the reputation of Hattie Lee, during the period commencing January 1, 1939, and ending about July 18, 1942?

''*A.* It is bad.''

Defendant now argues that this question was incompetent because it was neither confined to the vicinity nor to the general reputation of the defendant. However, the objection made to the question at the trial was that it was ''immaterial to any issue in this case.'' We have already held that defendant's reputation was material.

The context of the testimony of Rechlitz, Bell and Knapp was that their knowledge of defendant and her place was gathered from the general reputation in the vicinity. The questions propounded to these witnesses as to defendant's reputation could have been better phrased, but we are satisfied that no prejudicial error was committed in this respect. See 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096).

Defendant finally argues that the court erred in refusing to grant a motion for a directed verdict of

not guilty and for a new trial on the ground that the evidence does not support the verdict. Nothing will be gained by further discussion of the testimony, as we are satisfied from our consideration of the record that the court was correct in its holdings. The verdict is supported by the evidence.

The judgment is affirmed.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.