## UNITED STATES v. JAMERSON.
### No. 2135, Criminal.

District Court, N. D. Iowa, Central Division.
Nov. 30, 1944.

T. E. Diamond, U. S. Dist. Atty., and Franklin E. Gill, Asst. U. S. Dist. Atty., both of Sioux City, Iowa, for the United States.

L. R. Boomhower and Leslie L. Boomhower, both of Mason City, Iowa, for defendant.

GRAVEN, District Judge.

A Mann Act case under 18 U.S.C.A. § 398.

On requests for instructions and objections to evidence.

In this case the defendant is charged with having in April, 1942, transported Mabel Brooks and Christine Hawkins from Omaha, Nebraska, to Mason City, Iowa, by automobile for the purposes of having them practice prostitution at Mason City, Iowa. In this case the Government's claim is as hereafter set forth and evidence has been introduced by it which tends to support such claim. The defendant, Elizabeth Jamerson, a colored woman, was the owner and operator of a house of prostitution in Mason City, Iowa, operated with colored inmates. That in the Spring of 1942, she was in need of inmates. In April, 1942, she left Mason City, Iowa, in a Packard car owned by her and driven by her colored chauffeur and drove to Omaha, Nebraska. She arrived at Omaha, Nebraska, in the afternoon and went to a home of a friend. Mabel Brooks and Christine Hawkins, two colored prostitutes, lived near the home of that friend. Shortly after arriving in Omaha, the defendant contacted Mabel Brooks and Christine Hawkins and urged them ·to come to Mason City and practice prostitution at her place of business. After discussion and agreement as to the details of working arrangements the two girls

agreed to go. At four o'clock A.M. the next morning the defendant called for the two girls, and the car was driven across the Missouri River to Council Bluffs, Iowa, and then on to Mason City and directly to the defendant's place of business there. The car, both coming and going, was driven by the defendant's chauffeur. The two girls practiced prostitution briefly at Mason City and then left because of dissatisfaction with working conditions.

■ Omaha, Nebraska, is on one side of the Missouri River and Council Bluffs, Iowa, is on the other side of it. The middle channel of the Missouri River constitutes the boundary line between the States of Iowa and Nebraska. Iowa Constitution, Preamble, Boundaries; see also Lienemann v. Sarpy County, Neb. 1944, 16 N.W.2d 725, 729. At the time the defendant and the two girls were making their arrangements in Omaha, the possible application of the Mann Act to the trip to Mason City came up for discussion. As to who first brought up the matter is in dispute, but all three seemed to be aware that the Mann Act might be involved. One of the parties at least, apparently claimed to have been advised that the way to "beat the Mann Act" was to walk across the state line. There is a toll bridge across the Missouri River between Omaha, Nebraska, and Council Bluffs, Iowa. The toll house is beyond the bridge on the Iowa side with a distance intervening between it and the Iowa end of the bridge. When the car was on or in the vicinity of the bridge, the car was stopped by the direction of the defendant and the two girls got out and walked a short distance. They were then picked up by the car again and the car proceeded on its way to Mason City. As to whether the two girls did in fact walk across the state line in this case is in dispute. It is the claim of the two girls that the defendant being unfamiliar with the locality mistakenly assumed that the toll house marked the state line, and the defendant let them out at the toll house and that they walked east from there and thus did all their walking in the State of Iowa. It is the claim of the defendant that the two girls got out of the car at the Nebraska side of the bridge and walked across the bridge over the main channel of the river. The Government and the defendant have made requests for instructions relative to the matter of the walk taken by the two girls. There could be two different situations in regard to this phase

of the case. In the first place it will be necessary for the jury to determine whether the two girls did in fact walk across the state line. If the jury should find that the two girls did all their walking in the State of Iowa, then the matter of walking across the state line is not involved. However, since the jury could find that the two girls did walk across the boundary line as claimed by the defendant, it is necessary for the instructions to cover that situation. It is the view and holding of the Court, for the reasons hereafter indicated, that the defendant is not entitled to an instruction peremptorily instructing the jury that if they find that the two girls did in fact walk across the boundary line that the defendant should be acquitted. It is believed that an instruction broader in scope is required.

There is not involved in this case whether a woman could transport herself across a state line by walking, since the indictment in this case charges the defendant with transportation by automobile.

In Caminetti v. United States, 1917, 242 U.S. 470, on page 491, 37 S.Ct. 192, on page 197, 61 L.Ed. 442, L.R.A.1917F, 502, Ann. Cas.1917B, 1168, it is stated in regard to the Mann Act: "It seeks to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purposes prohibited."

■ While the Mann Act includes within its scope both so-called non-commercial cases and commercial cases (Caminetti v. United States, supra; Simon v. United States, 4 Cir., Oct. 18, 1944, 145 F.2d 345), it seems clearly indicated by the Congressional record in connection with the passage of the Act and the decisions (Mortensen v. United States, 1944, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331) that the primary purpose of the Act was to deal with the so-called commercial type of cases.

Counsel for the Government in the instant case claims that in this area the idea has become somewhat prevalent among those commercially engaged in supplying prostitutes and procuring and recruiting women and girls for purposes of prostitution, that a way has been found in which women and girls for purposes of prostitution can be gotten from state to state with perfect immunity so far as the Mann Act is concerned. The so-called way of "beating the Mann Act", is to avoid having the

women travel by train or bus, but to transport them by automobile, and to stop the automobile just before a state line is reached, and then have the women walk across the state line and then pick them up by automobile on the other side of the line. It would seem that if that theory is valid the Mann Act would in the main have to do with the non-commercial type of cases, since it would seem to be obvious that those engaged in commercialized vice would and do receive legal advice as to how to avoid any unpleasant consequences under the Mann Act, while those whose transportation of a woman constitutes an isolated non-commercial venture based upon impulse and reciprocating passion would not be so fortified, and these latter would be the only ones who would run afoul of the Act. If such is the law it is obvious that the plain intent of Congress in regard to commercialized movement of women from state to state for purposes of prostitution, has been thwarted by judicial interpretation and construction. If such is the law then the Mann Act is merely a means of trapping a few non-commercial minnows, while the sharks of commercialized vice carry on their predatory work with impunity and immunity.

■ It is believed that the intent of Congress should not be thwarted by unrealistic, unnatural, strained or highly technical construction and interpretation of the Act. In the case of Scott v. Prudential Ins. Co. of America, 1940, 207 Minn. 131, 290 N.W. 431, 433, it is pertinently said: "Judicial erosion of a statute by unwarranted narrowness of interpretation * * * is as much forbidden as outright judicial disobedience. * * * Judges have no right to maim or bleed it to death by a construction so 'strict' as to result in judicial mayhem." In the case of State v. Gurley, 1902, 170 Mo. 429, 70 S.W. 875, 876, it is aptly stated that: "Neither courts nor juries are required to believe nonsense merely because it is sworn to."

■■ Courts and juries are concerned with the realities of a situation, and the jury in the instant case has a right to decide what the realities are. In the instant case the jury could find that the defendant was engaged in the commercializing of prostitution, and that the sole object, purpose and intent of the defendant was to get the two girls from Omaha, Nebraska, to Mason City, Iowa, to have them engage in commercialized prostitution at the latter place. The Federal Courts have made it clear in a number of cases that under the Mann Act the legal responsibility of a defendant is to be measured and determined by what the real object and purpose of the trip was and not what took place or happened incidentally. For example, if a man transports a woman from one state to another and the real object and purpose of the trip was something other than sexual in nature, the fact that as an incident to and in connection with the trip sexual relations are had, the Mann Act is not involved. Biggerstaff v. United States, 8 Cir., 1919, 260 F. 926; Thorn v. United States, 8 Cir., 1922, 278 F. 932; Sloan v. United States, 8 Cir., 1923, 287 F. 91; United States v. Reginelli, 3 Cir., 1942, 133 F.2d 595. In the case of Mortensen v. United States, 1944, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331, the United States Supreme Court makes use of the terms "dominant motive" and "motivation" in connection with transportation under the Mann Act. In the instant case the jury could find that the "dominant motive" of the defendant was to get the two girls from Omaha, Nebraska, to Mason City, Iowa, for purposes of prostitution, and that the "motivation" for the trip was supplied by the defendant. In the case of Robinson v. United States, 10 Cir., 1944, 143 F.2d 276, 278, the Court refers to the transportation of the women in that case as being a "single, continuous act." In the instant case, the jury could find that the automobile trip from Omaha, Nebraska, to Mason City, Iowa, was a single continuous unitary act of transportation. In the case of Mortensen v. United States, 1944, 322 U.S. 369, 375, 64 S.Ct. 1037, 88 L.Ed. 1331, it is stated that in a trip made transporting women in interstate commerce there cannot be "arbitrary splitting" of the trip into segments. In the instant case, it is believed that it could constitute an "arbitrary splitting" of the trip into segments, for this Court to hold as a matter of law that the short distance walked by the two girls constituted a segment separate, distinct and independent from the rest of the trip. It would seem that the jury could find that what in reality took place in the instant case was transportation of the two girls by automobile from Omaha, Nebraska, to Mason City, Iowa, by the defendant. It no doubt frequently happens that when a number of people are traveling by car, that some of them, while the car is being stopped for repairs or other servicing, walk

up ahead a ways for exercise or for food or refreshment and then are picked up again. In such cases it could scarcely be seriously contended that the parties themselves or any one else would consider the trip other than as a trip by automobile. There are a number of places in the United States where a railroad or bus station is located on or near a state line. In accordance with this proposed "immunity" theory, those transporting women by train or bus for purposes of prostitution, could escape responsibility under the Mann Act by having the women transported get off a rear coach on one side of the state line and walk across the state line and get on a forward coach on the other side of the line, or by having the women transported get off the bus on one side of the line and immediately get on the bus on the other side. Fictions do in some instances serve a useful purpose in working out justice; for instance there is that fictitious "ordinary reasonable and prudent man" in the motor vehicle collision cases, and the fictitious "ready and willing buyer" in eminent domain cases, but legal fictions should not be substituted for realities to thwart justice.

■ It is interesting to note that in the case of Simon v. United States, 4 Cir., October 18, 1944, 145 F.2d 345, which was a case under the Mann Act where the defendant drove his car with the woman in it near to a state line, then walked across the state line with her, then picked her up on the other side of the line. The Fourth Circuit Court of Appeals in its opinion does not discuss that phase of the case. It is probably true that this Court in the instant case could properly omit any reference to the walking in this case, and merely submit in general terms the question of transportation, but since the matter of the walking might be confusing or puzzling to the jury, especially in view of the fact that it will likely be referred to in arguments to them, it is believed that the matter should be instructed upon. The jury will be instructed on the matter as follows:

"If you find that it was the purpose and intent of the defendant to transport Christine Hawkins and Mabel Brooks by automobile from Omaha, Nebraska, to Mason City, Iowa, for the purpose of having them engage in the practice of prostitution at Mason City, Iowa, and that the said trip in reality constituted one continuous unitary act, and that any walking done by Christine Hawkins and Mabel Brooks was merely incidental to the trip, then the fact, if it was a fact, that Christine Hawkins and Mabel Brooks walked for a short distance or distances, would not constitute a defense for the defendant, even if such walking took place across, or in the vicinity of, the boundary line between the States of Iowa and Nebraska."

■■ The defendant has requested that the jury be instructed that Mabel Brooks and Christine Hawkins were accomplices and that the defendant could not be convicted upon their testimony unless it was corroborated. There is other evidence strongly corroborating their testimony, including a paper in which the defendant wrote out in her handwriting testimony to be learned and given by one of the girls (but not given) to the effect that the girls took a street car from Omaha, Nebraska, to Council Bluffs, Iowa, and were picked up by the defendant in her car at Council Bluffs, Iowa. However, from the arguments of counsel in connection with this request, it appears that the chief concern of counsel in regard to it is in connection with the jury arguments. The defendant's counsel apparently wishes to argue to the jury that the two girls are equally legally guilty of the crime with the defendant and that they have testified favorably to the Government in hopes of leniency. Apparently counsel for the Government wish to argue that in participating in the transportation they committed no crime and that the two girls had every reason to testify truthfully, because the only way they could involve themselves in trouble with the Federal authorities would be to testify falsely in this case and lay themselves open to prosecution for perjury, and that by testifying truthfully herein they could be free from danger.

While in the early case of United States v. Holte, 1915, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504, L.R.A.1915D, 281, it was stated that under certain circumstances the woman transported could be regarded as being guilty of a conspiracy to violate the Mann Act, yet it was later authoritatively held in the case of Gebardi v. United States, 1932, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370, that the participation and acquiescence of a woman in her transportation for immoral purposes was not punishable under the Mann Act. In the case of Ghadiali v. United States, 9 Cir., 1927, 17 F.2d 236, it was held that a defendant could be convicted of a viola-

tion of the Mann Act on the uncorroborated testimony of the woman involved. In the case of Miller v. United States, 9 Cir., 1938, 95 F.2d 492, it was held that since the woman transported commits no federal crime she cannot refuse to answer questions on the ground that she might thereby incriminate herself. Therefore, the defendant in the instant case is not entitled to an instruction that the two girls were accomplices and that their testimony must be corroborated in order to convict the defendant. However, since the two girls were self-confessed prostitutes, it is believed that it would be in accord with good practice and fairness to instruct the jury to the effect that while it is not a defense to the defendant that the two girls made the trip willingly or cooperated in or approved the making of the trip for the purpose of engaging in prostitution at Mason City, Iowa, yet, because they are self-confessed prostitutes the jury should carefully scrutinize their testimony and receive it with care and caution.

 Pursuant to request of the defendant and under the authority of the cases of Mortensen v. United States, 1944, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331, and Drossos v. United States, 8 Cir., 1927, 16 F.2d 833, the jury will be instructed in substance that the intent or purpose of the defendant to have the two girls practice prostitution at Mason City, Iowa, must have been formed by the defendant before the two girls crossed the state line, or the defendant should be acquitted; and the jury will also be instructed that the fact that the two girls did practice prostitution at that place, if so they did, would be immaterial and the defendant could not be convicted if the intent and purpose to have them do so was not formed by the defendant until after the girls were in the State of Iowa.

 Pursuant to the request of the Government and under the authority of Wilson v. United States, 1913, 232 U.S. 563, 570, 34 S.Ct. 347, 58 L.Ed. 728, the jury will be instructed in substance that if the defendant did form the intent or purpose in Nebraska to transport the two girls to Mason City, Iowa, for the purpose of practicing prostitution, and that the defendant did transport them, then the fact, if it was a fact, that the two girls did not engage in prostitution there, would not constitute a defense for the defendant.

In the instant case the Government's evidence was to the effect that upon arrival at Mason City, Iowa, the two girls were taken directly to defendant's house or premises. The premises consisted of living rooms, several bedrooms, and a room in which a small restaurant business was conducted. The defendant was the owner and operator of the place and had been for several years preceding. The two girls testified as to the practice of prostitution by them at the defendant's place, and as to division of proceeds of such practice with the defendant. The defendant denies that the place was a house of prostitution. The Government put on a number of witnesses who testified that on or about the time the two girls were taken to the defendant's house, the house had then and for some time prior thereto had the general reputation of being a house of prostitution. This evidence was admitted over the strenuous objections of the defendant. The question is now presented (1) as to whether the admission of such evidence was error, (2) and if so whether the error could and should be cured by proper instructions.

 It is well settled that in cases under the Mann Act, that the character of the premises to which the transported woman is taken, may be shown as throwing light on the object or purpose of the transportation. United States v. Reed, 2 Cir., 1938, 96 F.2d 785, 787; Pine v. United States, 5 Cir., 1943, 135 F.2d 353. See also Wilson v. United States, 1913, 232 U.S. 563, 569, 34 S.Ct. 347, 58 L.Ed. 728. While it is clear that the character of premises as a house of prostitution may be shown, yet neither Court nor counsel have found any Federal Court decisions having to do with the Mann Act, indicating whether evidence of such character may be shown by general reputation.

 In Iowa it was early held that while the general reputation of those frequenting the premises could be shown on the question of the character of a place as a house of prostitution, yet evidence as to general reputation of the place was not admissible. State v. Lyon, 1874, 39 Iowa 379. However, by Chapter 142 of the Acts of the Twentieth General Assembly (1884) it was provided that in prosecutions for keeping a house of ill fame that the general reputation of the house could be shown. That legislation now appears as § 13176 of the 1939 Code of Iowa. Subsequently such

evidence has been admitted. State v. Lee, 1890, 80 Iowa 75, 45 N.W. 545, 20 Am.St. Rep. 401; State v. Lewis, 1939, 226 Iowa 98, 283 N.W. 424; State v. Owen, 1928, 205 Iowa 1052, 219 N.W. 23. As pointed out in State v. Lewis, supra, such evidence only establishes the character of the house, the defendant's keeping of the house is to be otherwise established. Since the Iowa decisions holding such reputation evidence admissible are based upon statute, it is necessary to determine what the majority rule appears to be in the absence of statute. In the case of Drake v. State, 1883, 14 Neb. 535, 17 N.W. 117, which was a prosecution for keeping a house of ill fame, the Court on page 118 of the Northwestern Reporter states: "To establish the bawdy character of the house, its general reputation, an'd that of the persons frequenting it, were competent evidence. It was not necessary to show particular acts of prostitution in the house." In the case of Territory v. Bowen, 1890, 2 Idaho 607, 23 P. 82, which was a prosecution for keeping a house of prostitution, the Court on page 82 of the Pacific Reporter states in regard to the matter of establishing the character of the house: "To do this it is not incumbent on the prosecution to prove particular, or any, acts of prostitution committed in the house. This, in the nature of things, would be impracticable, and generally impossible. Such acts are veiled from the public eye, and are known only to the participators therein, whose interest it is to carefully conceal them. Whatever difference of opinion may have existed on this subject, it is now settled by the weight of authority that in actions of this nature evidence of the general reputation of the house is competent and admissible to establish its character; and so we hold." The case of Demartini v. Anderson, 1899, 127 Cal. 33, 59 P. 207, while it was a civil case having to do with a lease, it very well sums up the law on the question. The Court, after stating that all the authorities were in agreement that where the character of a place as a house of prostitution is in issue, that evidence as to character of the inmates and frequenters was admissible, goes on to state on pages 207 and 208 of the Pacific Reporter as follows: "Whether or not the reputation of the house itself as one of ill fame may be shown is a question about which the cases are somewhat conflicting; but we think that the weight of authority, and the better reason, support the affirmative of the proposition. It has been so held in a large number of states, and the following are some of the cases which so hold: Sylvester v. State, 42 Tex. 496; Morris v. State, 38 Tex. 603; Allen v. State, 15 Tex. App. [320] 321; State v. McDowell, Dud., [S.C.], 346; King v. State, 17 Fla. 183; O'Brien v. People, 28 Mich. 213; Betts v. State, 93 Ind. 375; Graeter v. State, 105 Ind. 271, 4 N.E. 461; State v. Brunell, 29 Wis. 435; State v. Smith, 29 Minn. 193, 12 N.W. 524; Territory v. Bowen, 2 Idaho 607, 23 P. 82; Drake v. State, 14 Neb. 535, 17 N.W. 117; Cadwell v. State, 17 Conn. 467; Com. v. Kimball, 7 Gray [Mass.], 328. * * * We are much more impressed with the reasoning and consistency of the cases which hold that evidence of the reputation of a house of prostitution is admissible than with the reasoning and consistency of those cases which hold differently; for the latter, while excluding evidence of the reputation of the house, permit evidence of the reputation of the inmates of the house for the purpose of showing that it is a house of prostitution, and this seems to be a distinction without much difference." In the case of Hutchinson Inv. Co. v. Van Nostern, 1918, 99 Wash. 549, 170 P. 121, the Court held that evidence as to the reputation of a place was admissible and states on page 122 of the Pacific Reporter: "One of the issues upon the trial was the character of the place of business conducted by the appellants. Character being an issue, evidence with reference thereto was admissible."

It is the view of the Court that in accordance with the weight of authority and in accordance with what is believed to be the better rule, that in the instant case the evidence as to the reputation of the premises was properly admitted as tending to show the character of the premises to which the defendant took the two girls, as bearing upon the intent and purpose of the defendant, and no instruction should be given withholding that testimony from the consideration of the jury.