People of State of Illinois, Defendant in Error, v. Edgar Flagg, Plaintiff in Error.

Gen. No. 47,252.

First District, Third Division.

May 7, 1958.

Released for publication October 15, 1958.

Joseph B. Gilbert, of Chicago, for plaintiff in error.

Benjamin S. Adamowski, State's Attorney of Cook county (Francis X. Riley, and William L. Carlin, Assistant State's Attorneys, of counsel) for defendant in error.

JUSTICE FRIEND delivered the opinion of the court.

The People filed an information in the Municipal Court of Chicago wherein defendant was charged with violation of paragraph 162 of chapter 38 of the Illinois Revised Statutes 1953 in that, on March 27, 1957, in the city of Chicago, he "was then and there unlawfully, wilfully and knowingly a keeper of a certain house of ill fame or assignation, or place for the practice of prostitution, fornication and lewdness." Trial by the court without a jury resulted in a finding of guilty and a fine of $200 and costs, from which defendant appeals.

It appears from the evidence that on March 27, 1957 Police Officer Russell Burton rented a room in a loop hotel where he registered under the name of Bradshaw. While there he had two girls put on an indecent exhibition for him and his partner, Officer Patrick Tracy, after which he arrested them. He then telephoned Charles ("Chuck") Hester, a bellboy at the Pershing

Hotel, located at 6400 Cottage Grove Avenue. After the telephone conversation Burton, with his partner, went to the Pershing Hotel; they did not enter through the lobby, they did not register, they did not rent a room, they did not see the defendant nor talk to him; rather, they boarded the freight elevator directly from the rear entrance and were taken up to room 537 by Charles Hester, where two girls, Bertha Daniels and Sherry Burris, put on an indecent exhibition and were thereupon placed under arrest, as was Charles Hester. The room was rented to Robert Moore (or Robert Warren), who had been a tenant for more than four months preceding the day in question. Moore was not present at the performance given by the two girls for the officers in his room, but he was later arrested. By telephone Burton contacted the switchboard operator downstairs and then, together with the two girls, went into the lobby and talked to the operator in person. It was during this conversation that Burton, for the first time, saw the defendant, Flagg, the manager of the hotel. The switchboard operator told Burton, apparently in response to a question, that her instructions were not to put through any calls to the police without first consulting the manager; the officer testified that Flagg had confirmed these instructions to the operator. Following his conversation with the operator, the officer turned to Flagg and inquired as to his identity; Flagg replied that he was the manager of the hotel, a position he had held for two or three years. He stated that if any rooms were rented for prostitution it was without his knowledge, and that he had at all times tried to co-operate with the police. Flagg was thereupon arrested and charged with being a keeper of a house of prostitution.

Before trial defendant asked for a severance, which was denied, and he argues that he was prejudiced as the result of being compelled to stand trial with others

550

who were charged with offenses with which he admittedly had nothing to do. The record discloses that at the outset of the trial Hester, the bellboy at the Pershing Hotel, and the two girls, Bertha Daniels and Sherry Burris, entered pleas of guilty. All the other defendants pleaded not guilty, waived jury trial and answered that they were ready to proceed. It was at this point that Flagg made his oral request for a severance. The remaining defendants, except Flagg, were found not guilty before the charges against Flagg were heard; in fact, he was tried separately and was in no way prejudiced by the denial of his motion.

On the hearing of charges against defendant, the state introduced no direct testimony that he was the keeper of a house of ill fame or that the Pershing Hotel, of which he was the manager, was a house of prostitution; but in lieu of evidence of the violation charged in the information, the state offered testimony of the reputation of the hotel, and was permitted, over defendant's objections, to show by several witnesses, all members of the police force, that "the general reputation" of the Pershing Hotel in Chicago was "bad." In answer to direct questions by the state, two of the officers said that "the general reputation" of the Pershing Hotel was "bad." Neither of these officers testified as to what they meant by "general reputation," but an officer who preceded them had testified to the "bad" reputation of the Pershing Hotel as to "license prostitution."

■ ■ It is urged by defendant that the court erred in admitting such testimony. The statute (Ill. Rev. Stat. 1957, ch. 38, § 162) under which the information was filed is directed against "Whoever keeps or maintains a house of ill fame or place for the practice of prostitution or lewdness . . ." "These words do not," as the court pointed out in the early case of Parker v. People, 94 Ill. App. 648, "state two offenses, the first

551

keeping a house whose reputation is bad, and the second keeping a place for the practice of prostitution. . . . The general ill reputation of the house is no part of the crime." There the court held that evidence of the general reputation of a house whose keeper was charged with keeping a house of ill fame, which is based upon mere hearsay, was inadmissible as tending to establish the guilt of the accused; and for this, as well as for other reasons, the court reversed the judgment of the trial court against defendant and remanded the cause for another trial. In the later case of City of Dixon v. Mayer (Abst.), 186 Ill. App. 247, it was held that on trial of a person for keeping a house of ill fame, testimony of a witness as to the general reputation of defendant's house for chastity and morals in that community was incompetent. Subsequently, the Supreme Court of Illinois said, in People v. Ryberg, 287 Ill. 195: "The term 'house of ill-fame' is synonymous with bawdy house, having no reference to the reputation of the same. The gist of the offense is the keeping and using of the house for the purpose of prostitution and lewdness, and not its reputation." These cases hold that the offense is not in the reputation but in being a keeper; and the lack of evidence that defendant was the keeper of a house of prostitution cannot be supplied by testimony as to the alleged reputation of the hotel.

We are not unmindful of the fact that in some states evidence of reputation is admissible. The People cite numerous cases in support of this proposition, including United States v. Jamerson, 60 F. Supp. 281 (D. C. Northern District of Iowa), a case originating in Iowa. There the court held that, under Iowa law, the general reputation of a place as a house of prostitution was admissible to establish the character of such place as a house of prostitution. In a comprehensive discussion of the problem, with citation of authorities from various jurisdictions, the court

stated that in an early Iowa case (State v. Lyon (1874), 39 Iowa 379), upon the trial under an indictment for leasing a house for the purpose of prostitution, while the general reputation of those frequenting the premises could be shown on the question of the character of a place as a house of prostitution, yet evidence as to general reputation of the place was not admissible. However, the Federal court continued, the Iowa General Assembly in 1884 provided that in prosecutions for keeping a house of ill fame the general reputation of the house could be shown; and subsequently such evidence was held, by Iowa courts, to be properly admissible. "As pointed out in State v. Lewis, supra [1939, 226 Iowa 98, 283 N. W. 424]," the court in the Jamerson case commented, "such evidence only establishes the character of the house, the defendant's keeping of the house is to be otherwise established. . . . the Iowa decisions holding such reputation evidence admissible are based upon statute . . ." Since the Jamerson case was in the Federal courts, the reviewing court had "to determine what the majority rule appears to be in the absence of statute" and concluded that the weight of authority and the better reason supported the proposition that the reputation of the house itself as one of ill fame may be shown; such evidence bears upon the intent and purpose of the defendant. The Illinois case of People v. Berger, 284 Ill. 47, is cited by the People for its statement that "Most authorities agree that on a prosecution for keeping such a house as this [a house of prostitution] the state may prove the character of the inmates and frequenters of the house, and many courts hold it can prove the reputation of the house." But shortly thereafter, in People v. Ryberg, 287 Ill. 195, the court specifically said that "The gist of the offense is the keeping and using of the house for the purpose of prostitution and lewdness, and *not* its reputation." (Emphasis ours.) In the recent Illinois Appellate Court decision, People

553

v. Williams, 6 Ill.App.2d 325, upon which the People rely, the court decided that it was unnecessary to pass upon the admissibility of evidence directed toward establishing the reputation of the house there under consideration for the reason that defendant "deliberately injected the issue into the case . . . and ought not to be heard to object to the propriety of adverse testimony offered by the People to meet the issue he first inserted in the cause." Thus the rule in Illinois is that the People must prove that defendant is a keeper of a house of prostitution. The reputation of the house is not directly at issue, although evidence of its reputation might be admissible to corroborate either element, that the house is a house of prostitution or that the defendant is knowingly its keeper.

■ The state further sought to prove its charge of keeping a house of ill fame by testimony of prior arrests of persons who were not shown to be inmates of the hotel, and of the charges allegedly placed against them or of their conviction. Defendant repeatedly objected to this type of evidence. The police officers testified to other arrests in the Pershing Hotel; they were permitted to testify to the charges placed against some of the people arrested, and to the conviction of some of those people. Such testimony was clearly incompetent to prove the guilt of defendant. People v. Newbold, 260 Ill. 196.

■ The only act which was committed on the premises managed by defendant which would tend to support the charge that he was a keeper of a house of ill fame, if done with his knowledge and consent, was the lewd exhibition of the girls Bertha Daniels and Sherry Burris, which took place in room 537, apparently by pre-arrangement on the part of the complaining police officer, Russell Burton, and his partner, Patrick Tracy. There is not the slightest intimation that defendant had anything to do with this exhibition. He apparently knew nothing about it; he did not see the officers enter

554

the hotel. The room was occupied by Robert Moore (or Robert Warren), who had had occupancy for several months. Defendant knew nothing of what was going on in that room until the officers came down in the lobby with the girls who had been placed under arrest. Flagg was arrested as soon as the officers learned that he had given orders to the switchboard operator not to put through calls to the police without consulting him—information which may have aroused suspicion in the minds of the officers, but which was certainly not competent evidence to prove that he was the keeper of a house of prostitution. To prove that Flagg was guilty as charged, it was necessary to show that the Pershing Hotel was operated as a house of prostitution, and that Flagg, its manager, was the keeper of the house.

For the reasons indicated, the judgment of the Municipal Court is reversed.

Judgment reversed.

BURKE, P. J. and BRYANT, J., concur.