1020

## KORACH BROS. v. CLARK.
### No. 332.

United States Emergency Court of Appeals.

Heard at Chicago, Ill., April 11, 1947.
Decided July 11, 1947.

Julian H. Levi, of Chicago, Ill. (Samuel E. Hirsch and William Ruger, both of Chicago, Ill., on the brief), for complainant.

Israel Convisser, of Washington, D. C., (Carl A. Auerbach, W. R. Ming, Jr., and Harry H. Schneider, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainant manufactures women's outerwear garments, among them being misses' and junior misses' dresses in the $57 and $66 per dozen price lines. The Price Administrator asserted that by selling these two price lines the complainant had violated the provisions of Revised Maximum Price Regulation No. 287—Manufacturers' Prices for Women's, Girls', Children's and Toddlers' Outerwear Garments.[1] Misses' and junior misses' dresses were classified as category 22 in Appendix A of Section 27 of RMPR 287. The complainant protested the regulation on May 24, 1945. On November 28, 1945 the Price

---

[1] 8 F.R. 9122, issued and effective June 29, 1943. A summary of the regulations which preceded Revised Maximum Price Regulation 287 in establishing maximum prices for women's outerwear garments is set out in the opinion of this court in

Administrator instituted an action for treble damages and for an injunction in the United States District Court, Northern District of Illinois, alleging, inter alia, that the complainant had made sales of commodities subject to RMPR 287 at prices in excess of the highest price lines prescribed by the regulation. This enforcement action which is concerned with sales made during the periods November 29, 1944, to November 28, 1945 and January 25, 1946 to November 10, 1946 is still pending.[2] The protest was denied March 28, 1946. The complaint now before us was filed in this court pursuant to Section 204(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 924(a). The complainant then moved for and was granted leave to present additional evidence. The record was reopened and additional evidence was submitted by both the complainant and the Price Administrator. On December 9, 1946 the Price Administrator denied the protest upon reconsideration in the light of the additional evidence.

Section 15(a) of RMPR 287 provided that "No manufacturer shall deliver any garments in a selling price line higher than the highest selling price line listed for a garment of the same category number on his pricing chart in effect on the date of delivery." The pricing chart to which reference is thus made was required by Section 1389.353(a) of Maximum Price Regulation 287,[3] which was continued in substance by Section 3 of RMPR 287 and provided:

"§ 1389.353. *Pricing of garments by manufacturers, except manufacturing-retailers and custom tailors*—(a) *Pricing chart*. Before selling or delivering any garment priced under this regulation, the manufacturer must prepare a pricing chart containing:

"(1) A list of the category numbers delivered during March 1942.

"(2) A list of each of the 'selling price lines' delivered during March 1942, in each category number. * * * "

"Selling price line" was defined in Section 7(a) of RMPR 287, as amended by Amendment No. 3,[4] to read as follows: "(a) 'Selling price line' means the price at which a manufacturer first offered for sale to his general trade a style of garment on the occasion of its first cutting, and at which a number of garments equal to at least 5% of the number of garments contained in that cutting were delivered. On or before November 1, 1944, each seller who has a selling price line listed on his pricing chart which does not meet these requirements must amend his copy of the pricing chart by deleting such selling price line. Subsequent offers to sell, or sales, of the same style at higher or lower prices are not to be considered as establishing separate selling price lines. Selling prices which differ from the prices customarily established for the general trade because of discounts, allowances, or price differentials for different classes of purchasers do not constitute selling price lines. Sample sales or accommodation sales shall not be considered as establishing a selling price line."

The complainant contends that it had established its right to the $57 and $66 per dozen selling price lines in compliance with the provisions of the regulation. It alleges that in August and September, 1941 it undertook the designing and planning of a line of women's cotton and synthetic fibre dresses to sell at prices of $57 and $66 per dozen; that in August, 1941 it began the purchase of piece goods for fabrication into these price lines; that by December, 1941 it had prepared a budget in connection with the manufacture of these two price lines and appropriated $100,000 for this purpose; that prior to January, 1942 it had employed for these two price lines a special designer, pattern-maker and salesman and leased separate salesrooms for the sole purpose of

Modern Mfg. Co., Inc. v. Fleming, Em. App.1947, 160 F.2d 892, and need not be repeated here.

[2] Supplementary Order 193, issued November 12, 1946 and effective November 10, 1946 (11 F.R. 13464), exempted the complainant's commodities from fur-

ther price controls. The issue is not moot, however, in view of the enforcement action.

[3] 7 F.R. 10460, issued December 12, 1942.

[4] 9 F.R. 12590, 12591, issued and effective October 16, 1944.

selling these two price lines; that between January 1, 1942 and the end of March, 1942 it had obtained and accepted bona fide uncancellable orders for these two price lines in excess of $100,000; that it began cutting of dresses in these two price lines on February 24, 1942 and that by March 30, 1942 it had cut many thousands of dozens of such dresses; that by March, 1942 it had spent in excess of $77,000 for piece goods purchased for this purpose; that when garments were delivered to the Chicago office they were ready for shipment to customers; that commencing about March 28, 1942 customers did select garments for filling orders previously placed and directed that they be packed and shipped to themselves; that by April 6, 1942 in excess of $9,500 of merchandise in the two price lines had been billed and shipped to customers and that bills to cover eighty customers were rendered on April 3, 1942; and by April 8, 1942 in excess of $13,000 of invoices were rendered to customers for merchandise delivered to them.

The complainant and the Price Administrator disagree as to whether these facts have been proved and the inferences to be drawn therefrom. We have no occasion to resolve this factual dispute, however, since it is a matter for the enforcement court to determine. Assuming, however, that the facts as alleged by the complainant have been proved the complainant and the Price Administrator also disagree as to whether they amount to compliance with the delivery requirements of RMPR 287 so as to entitle the complainant to sell in the two price lines with which we are concerned. Since the complainant contends that the Administrator's interpretation of these requirements would render the regulation invalid it becomes necessary for us to examine the regulation to determine the correct meaning of its delivery requirements.

■ We must first, however, dispose of the contention that the highest price line limitation provision of the regulation renders the regulation invalid. Questions as to the validity of Highest price line limitations have been before us in two previous cases. In Montgomery Ward & Co. v. Bowles, Em.App.1945, 147 F.2d 858, we held that it was within the statutory power of the Price Administrator to limit sellers to price lines no higher than the highest price lines in which they had dealt during the base period of March, 1942. We concluded, however, that Maximum Price Regulation 330, the regulation there under attack, was invalid as applied to retailers of women's and children's outerwear garments because the requirement that a seller in order to establish his right to a given price line must have delivered a garment in that price line during March, 1942 resulted in discrimination among equals brought about by chance rather than by a scientific approach to price control. However, in Modern Manufacturing Co., Inc. v. Fleming, Em. App.1947, 160 F.2d 892, we found that the delivery requirement of the highest price line provision when applied to manufacturers rather than to retailers was reasonable and non-discriminatory. We held that the highest price line limitation did not render Maximum Price Regulation 287 and Revised Maximum Price Regulation 287 invalid. We adhere to that conclusion and find no merit in the complainant's contention that Section 12(b) of the Price Control Extension Act of 1946, 50 U.S.C.A. Appendix, § 925(e), compels a contrary result. It follows that as applied to the complainant, which is a manufacturer and not a retailer, the highest price line limitation does not render the regulation invalid.

We turn then to consider the remaining contention of the complainant, namely, that the Price Administrator has misinterpreted the delivery requirements of the regulation; and that if the regulation is to be interpreted as the Administrator contends with respect to the delivery requirements it is arbitrary, capricious and unlawful.

The Price Administrator has construed Section 7(a) of RMPR 287, as amended, to mean that in order to establish his right to sell within a given price line a manufacturer must have delivered at some time prior to March 31, 1942 a number of garments equal to 5% of the first cutting of the style at the price sought to be established. There is, however, no express provision in the section or elsewhere in the regulation

that the delivery of the 5% of the first cutting had to be in the period prior to March 31, 1942.

■ The Statement of Considerations which accompanied Amendment 3 to RMPR 287 explained the purpose of the amendment as follows: "The term 'selling price line' has been redefined to clarify the intent of the original provision of the regulation. The Office of Price Administration intended to permit manufacturers to continue to sell those selling price lines in which they had manufactured and sold to the general trade a substantial number of garments. It was not the intention of the Office of Price Administration to permit manufacturers to list as selling price lines those price lines in which they had experienced atypical or freakish sales of a very small number of garments." It will thus be seen that the purpose of the amendment was simply to provide a standard as to what would amount to a substantial delivery, namely, 5% of the first cutting, and that it did not purport to deal with the time of delivery.

We think that RMPR 287, as amended by Amendment No. 3, must be construed as authorizing the inclusion in the manufacturer's spring pricing chart of a selling price line at the price at which the style of garment in question was first offered for sale to the manufacturer's general trade on the occasion of its first cutting, if some garments of the line were delivered at that price during March 1942, and provided only that a number of garments equal to at least 5% of the first cutting were delivered at that price at some time but not necessarily during or before March 31, 1942. In other words, the regulation requires merely that one or more garments of the first cutting be delivered at the original offering price during the month of March 1942 and that in determining whether the selling price line met the 5% delivery requirement of the regulation all deliveries out of the first cutting at the initial price may be considered even though some of them were made after March 31, 1942.

In view of our conclusion that RMPR 287 did not require the delivery of 5% of the first cutting of a style of garment to be made during or prior to March 1942 in order to establish a selling price line and that the Administrator's contrary interpretation is erroneous we have no need to consider the complainant's contention that the regulation, if interpreted as contended for by the Administrator, is arbitrary, capricious and contrary to law.

■ As we have said there is an enforcement suit now pending against the complainant. In the present suit the complainant seeks a declaration of the invalidity of the regulation in order to establish a defense on that ground which may be asserted in the enforcement suit. The suit now before us is, therefore, a proper suit with respect to a liability or offense under the Emergency Price Control Act which arose or was committed before its termination on June 30, 1947. This court accordingly has jurisdiction under Section 1(b) of the act, 50 U.S.C.A.Appendix, § 901(b), to consider and decide the case after that date. 150 E. 47th St. Corp. v. Porter, Em.App.1946, 156 F.2d 541.

A judgment will be entered dismissing the complaint.