**KORACH BROS. v. CLARK, Director, Division of Liquidation, Department of Conmmerce.**

**No. 414.**

United States Emergency Court of Appeals.

Heard at Chicago Sept. 6, 1947.

Decided Nov. 25, 1947.

As Amended on Denial of Rehearing Jan. 2, 1948.

Writ of Certiorari Denied March 8, 1948.

See 68 S.Ct. 663.

Julian H. Levi, of Chicago, Ill. (Samuel E. Hirsch and William Ruger, both of Chicago, Ill., on the brief), for complainant.

Harry H. Schneider, Atty., Dept. of Justice, of Washington, D. C. (Tom C. Clark, Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, Attys., Department of Justice, and Irving J. Helman, General Counsel, and Israel Convisser, Atty., Liquidation Division, Department of Commerce, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainant in this case is a manufacturer of women's apparel against which is pending in the United States District Court for the Northern District of Illinois a suit instituted by the Price Administrator under Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e), for treble damages for violation of Revised Maximum Price Regulation No. 287. The facts of complainant's case are stated in the opinion of this court disposing of its prior complaint attacking the validity of the regulation. Korach Bros. v. Clark, Em.App., 162 F.2d 1020, certiorari denied, 68 S.Ct. 80. By the present complaint the complainant seeks our review of a determination by the Temporary Controls Administrator that the facts of its case do not entitle it to the dismissal of the enforcement suit under the provisions of the final paragraph of Section 205(e), which was added to that section of the act by the Price Control Extension Act of 1946.

The complainant urges that the language of the statutory provision upon which it relies is clear and unambiguous and that the facts of its case fall squarely within the terms of that provision. The Attorney General, appearing for the respondent, argues, on the other hand, that the statute is so ambiguous as to require resort to its legislative history for its construction and that construed in the light of that history the complainant is not entitled to relief under it. We take neither view, but after full consideration conclude that while the provisions of the statute are clear enough on their face to make resort to their legislative history unnecessary they do not entitle the complainant to the dismissal of the enforcement suit pending against it.

The final paragraph of Section 205(e), the statutory provision which is involved in this case, reads as follows:

"The Administrator shall not institute or maintain any enforcement action under this subsection against any manufacturer of apparel items where the Administrator shall determine (1) that the transactions on which such proceeding is based consisted of the manufacturer's selling such an item at his published March 1942 price list prices instead of his March 1942 delivered prices, and (2) that the seller's customary pricing patterns for related apparel items would be distorted by a requirement that his ceilings be the March 1942 delivered prices. The Administrator's determinations under this paragraph shall be subject to review by the Emergency Court of Appeals in accordance with sections 203 and 204."

Considering this statutory language we observe at the outset that it applies only to manufacturers of apparel items against whom enforcement suits under Section 205 (e) have been brought by the Administrator. Here the complainant is unquestionably a manufacturer of apparel items—women's dresses—and an enforcement suit has been instituted against it by the Administrator under Section 205(e) which is presently pending. The complainant is, therefore, within the general scope of the statute.

Proceeding further to consider the language of the statute it will be seen that the

first condition for relief for a manufacturer who comes within its general scope is that the transactions on which the enforcement suit is based consisted of the manufacturer's selling an apparel item "at his published March 1942 price list prices instead of his March 1942 delivered prices." The respondent argues that this must be construed to mean that the particular item sold in alleged violation of the regulation must have had in March 1942 a published price list price and a lower delivered price, in other words that the item must be a staple one which had also been sold and delivered in identical form in March 1942. In support of this contention he points to the fact that the statute was enacted upon the urgent representations to Congress of a group of manufacturers of work gloves, a staple article of apparel

We think that the construction which the respondent seeks to place upon the statute is not justified by its language but would amount to an amendment of that language so as in effect to read "the manufacturer's selling such an item at *its* published March 1942 price list *price* instead of *its* March 1942 delivered *price*." But the language which the statute actually used refers to the manufacturer's prices generally, not to the price of the particular apparel item in question. Otherwise the use of the pronoun "his" and the plural form of "prices" would be meaningless. Therefore, the language cannot be restricted to the price of the particular apparel item alone which is the subject of the enforcement suit. In our view the reference in the statute to the manufacturer's "March 1942 delivered prices" is to the delivered prices in that month of those apparel items which are related to the ones involved in the enforcement suit in the sense that the March 1942 delivered prices of the former determine the prices which may lawfully be charged for the latter under the terms of the applicable maximum price regulation. By the same token the manufacturer's "published March 1942 price list prices" must refer to his published prices in that month for apparel items similarly related to the items involved in the suit.

Nor do we accept the respondent's contention that the phrase "published March 1942 price list prices" necessarily involves the existence on that date of a formal printed price list of the kind customarily in use in the work glove industry. On the contrary we think that the distinction which the statute here seeks to make is merely between those prices at which apparel items were publicly offered for sale in March 1942 and those prices at which they may have been actually delivered in that month. It follows that any sort of a publication in March 1942 of an apparel manufacturer's offering prices meets the statutory test if it was sufficient definitely to establish the prices at which he was offering relevant apparel items to the buying public in that month.

We return then to the question whether the first condition of the statute, as we have construed it, is met by the facts of the complainant's case. The apparel items which it manufactured were women's dresses and their prices were regulated by Revised Maximum Price Regulation No. 287 which imposed highest price line limitations upon the various categories of garments covered by the regulation. The garments here in question—misses' and junior misses' dresses—were classified in category 22. The structure of the regulation was discussed in some detail in our former opinion. It is sufficient here to note that the highest price line limitation which the regulation imposed upon the selling prices of garments in each category was determined by the highest price at which garments in that category had been delivered by the manufacturer in March 1942.

Admittedly, in March 1942 the complainant had delivered misses' and junior misses' dresses at the price of $45 per dozen. There is conflicting evidence as to whether the complainant did not also deliver such garments in that month at $57, $60 and $66 per dozen, but the evidence is undisputed that it publicly offered garments in category 22 for sale in that month at those higher prices. It is also undisputed that subsequently the complainant sold and delivered misses' and junior misses' dresses in category 22 at prices of $57, $60 and $66

per dozen. The enforcement suit now pending against it is based upon those sales. We think it clear from these facts that complainant's case meets the first condition which the statute imposes upon it as a prerequisite to relief. For the suit against it is based upon sales of misses' and junior misses' dresses at prices at which dresses in that category were publicly offered for sale in March 1942 instead of the prices at which they were delivered in that month.

We pass, then, to the second condition which the statute requires the complainant to meet. That is "that the seller's customary pricing patterns for related apparel items would be distorted by a requirement that his ceilings be the March 1942 delivered prices." We shall assume for the purposes of discussion that the word "ceilings" as here used is sufficiently broad to comprehend the highest price lines permitted by RMPR 287 as well as the maximum prices which it established for individual items. The question remains whether the complainant has shown that it had pricing patterns for related apparel items which were customary to it and, if it did, that they would be distorted if the requirements of RMPR 287 were enforced.

We are satisfied that the complainant has failed to meet this condition of the statute. The undisputed evidence shows that the first spring offering by the complainant of misses' and junior misses' dresses at $57, $60 and $66 per dozen was made in the spring season of 1942, the first deliveries being made at the very earliest at the end of March. The pricing pattern to which the statute refers is the arrangement, design or outline of prices which a manufacturer has fixed and published for a series of related apparel items. Thus in March 1942 the complainant's published pricing pattern for misses' and junior misses' dresses was $66, $60, $57, $45, $39, $36, $30 and $24 per dozen. But so far as the prices of $66, $60 and $57 were concerned this was not a customary pricing pattern since those particular prices had never previously been included in the complainant's list of prices for such garments for a spring selling season. The fact that complainant had offered dresses at $60 per dozen in the fall of 1941 is without significance in this connection since it is clear that in this industry dresses offered in the fall selling season for winter wear are quite different from those offered in the spring for summer use and that each of these seasonal lines has its own distinctive pricing pattern.

Since the complainant's pricing pattern in March 1942 was clearly a new pattern for the selling season then current rather than a customary one, we need not consider whether that pattern was distorted by the application of the highest price line provisions of RMPR 287. We conclude that the complainant has failed to bring itself within the second condition laid down in the last paragraph of Section 205 (e). It follows that the Temporary Controls Administrator did not err in denying the complainant's application for relief under that paragraph.

We note that this suit was brought against the Director of the Division of Liquidation of the Department of Commerce, the Temporary Controls Administrator's office having been terminated on June 1, 1947, after the determination here complained of but before the institution of this suit. In Hal-Mar Dress Co. v. Clark, 165 F.2d 222 decided to day, we hold that the Attorney General and not the Director of the Division of Liquidation succeeded to the Administrator's functions under the last paragraph of Section 205(e). However, the Attorney General appeared in this case as counsel for the Director and under the circumstances we do not think it necessary that he should be formally joined as a party respondent.

A judgment will be entered dismissing the complaint.