### UNITED STATES v. STIRSMAN.
### No. 10925.

United States Court of Appeals
Seventh Circuit.

May 11, 1954.

Michell J. Freije, Samuel Blum, Indianapolis, Ind., for appellant.

Jack C. Brown, U. S. Atty., William H. Sparrenberger, Stephen Leonard, Asst. U. S. Attys., Indianapolis, Ind., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Convicted by a jury under a single count indictment, charging transportation of a stolen 1952 Cadillac automobile, motor number 5262–37869, from Hamilton, State of Ohio, to Indianapolis, State of Indiana, in violation of 18 U.S.C. § 2312; 18 U.S.C.A. § 2312, defendant Stirsman was sentenced to a term of four years imprisonment.

Before we deal with his motion for a judgment of acquittal we must dispose of constitutional matters urged as reasons for reversal. For if this defendant has suffered deprivation of his rights under United States Constitution, Amendments IV and V, then the Government's case is vulnerable. Though confronted with the disastrous results of an allegedly illegal search and seizure, by a city police officer, defendant did not move to suppress that evidence at any time during the two months prior to trial. Questions suggested by defendant dip into that sensitive area of interplay between constitutional rights and law enforcement, and those facts material to our consideration and disposition of this appeal follow.

I. The Apprehension.

Dr. Hayes purchased a Cadillac two door coupe motor number 5262–37869, on June 23, 1952 in his home city of Jacksonville, Florida. Lead and repainting replaced the manufacturer's emblems on the front and trunk of his automobile, from which the Cadillac V had been removed by the Doctor. There were about 13,000 miles of travel on this vehicle when it was stolen from the Doctor's residence in that city on January 22, 1953. Doctor Hayes positively identified, as his own, the Cadillac returned to him in February, 1953 by his insurance carrier. However, he qualified this identicalness by testifying that the motor number on the coupe returned to him was "entirely different than the original number."

Witnesses engaged in the business of buying and selling used cars, in Indian-

apolis, Indiana, described defendant's attempts, in the first week of February, 1953, to sell them a 1952 Cadillac coupe bearing Ohio license plates. The manufacturer's emblems were missing from the front and rear of this automobile which defendant tried to dispose of for cash. During his shopping expedition, defendant gave his name as Joseph D. Brewer. He told the used car dealers that he had an Indiana title and had purchased this Cadillac in Ohio.

It is uncontroverted, in this record, that the defendant is the man who tried selling a Cadillac to these witnesses and who gave the name Brewer.

While the defendant was bargaining with auto dealer, J. L. Concannon, a police officer, working in plain clothes, named Gerald Aikman, drove up to Concannon's place of business. Aikman was assigned to the Detective Division, stolen automobile detail for the City of Indianapolis. He arrived about the time defendant was in Concannon's office waiting to use the telephone. Because Concannon wanted to talk with Aikman "about the car," both of them went outside and sat in an automobile. Stirsman came out of Concannon's office and got into the Cadillac. In response to Concannon's exclamation—"Well wait just a minute," Stirsman shouted that he was going to Murphy's and drove off at a high rate of speed in the opposite direction from Murphy Auto Sales. At this time, officer Aikman hollered "halt! stop," got into his police car and attempted to follow the Cadillac, but was unable to do so. This same afternoon Stirsman driving a 1952 Cadillac coupe with Ohio plates, was halted on U. S. 36 by State trooper Clevinger, who had received a "call." Stirsman gave his name to the trooper as Joseph Brewer, showed him an Indiana title and a Florida license. The trooper did not see Stirsman commit any violation of law and did not arrest him.

Officer Aikman arrived while Stirsman was in custody of the state police, but not under arrest. Having interposed an objection to a question put by the U. S. Attorney to Aikman concerning his conversation with Stirsman, the defense was permitted to break in and question Aikman. This inquiry of the witness Aikman, established that he did not have a warrant for the arrest of Stirsman; that he did not see him commit a felony or misdemeanor. City policeman Aikman did not arrest Stirsman for any "criminal law violation," but he did place him under arrest for "investigation."

When the United States Attorney took his witness back from defense counsel, he asked Aikman for the substance of his conversation with, and prior to the arrest of, Stirsman. Because of his objection, defense counsel was again permitted to take over the witness, and in response to his questioning, Aikman testified that in any case involving a car that is transported from one state to another, he works with the federal authorities. But upon resumption of his direct examination, Aikman testified that at the time he apprehended the defendant and had the conversation, he (Aikman) was not working in any degree with regard to this specific case with the federal authorities.

The pith of Aikman's testimony lies in his conversation with Stirsman. As officer Aikman related its substance, over defense objections, it appeared that Stirsman admitted that he might have said he was going to Murphy's as he departed Concannon's place of business. Stirsman showed Aikman a Social Security card, an army discharge and a duplicate Florida driver's license all in the name of Joseph David Brewer. Aikman checked the motor number 526286065 on the Indiana title, handed him by Stirsman, with the number under the hood of the Cadillac. They were the same. But, in studying that motor number, Aikman determined in his opinion, that it had been tampered with.

Aikman stated that he told Stirsman he was going to take him to state police headquarters and examine the Cadillac.

At headquarters Aikman examined the confidential number on the Cadillac

and found it to be 5262–37869.[1] He explained to the court and jury that this confidential number is engraved some place on the motor and is only known to the National Auto Theft Bureau and agents of the Federal Bureau of Investigation. The public and confidential motor numbers are identical at time of assembly, but in this particular instance they were different. In Aikman's opinion the public motor number of this Cadillac had been tampered with. This confidential number and the motor number on the registration certificate of Dr. Hayes are the same according to Aikman.

Against this factual background, Stirsman seeks to infect Aikman's search and seizure with the taint of his allegedly illegal arrest of the defendant "on suspicion," fusing with this thesis his contention of cooperation between Aikman and federal authorities. Defendant uses this blending process in order to demonstrate the applicability here, of such cases as Gambino v. United States, 1927, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, and our decision in Fowler v. United States, 7 Cir., 1932, 62 F.2d 656. But where Mr. Justice Brandeis was able to point at a seasonable motion to suppress evidence in advance of the Gambino trial, 275 U.S. 310, 313, 48 S.Ct. 137, we find no similar pleading here. Nor do we need to go beyond the basic premise, on which the Gambino majority erected their opinion, viz, "But facts of which we take judicial notice * * * make it clear that the state troopers believed that they were required by law to aid in enforcing the National Prohibition Act, and that they made this arrest, search, and seizure, in the performance of that supposed duty, solely for the purpose of aiding in the federal prosecution." 275 U.S. 310, 315, 48 S.Ct. 137, 138. Our holding in Fowler v. United States, 7 Cir., 1932, 62 F.2d 656 was grounded on clear evidence of long established practice of cooperation between local police squads and federal prohibition officers. There we recounted daily conferences between city and federal authorities concerning violations of the National Prohibition Law in the City of Indianapolis. Here Stirsman relies upon a slender reed embedded in Aikman's preliminary examination by the defense, with which to launch his demonstration of cooperation between law enforcing agencies. But that bit of Aikman's testimony, just related, cannot be expanded to support defendant's argument. No federal officers participated in, or were present at, the search of the Cadillac, on U. S. 36, or even thereafter at state police headquarters. This record fails to supply evidence demonstrative of any subterfuge employed by federal officers to circumvent Stirsman's constitutional rights. Accord: United States v. Haywood, 7 Cir., 1953, 208 F.2d 156. We are satisfied that Aikman's search is not imputable to the federal government. His activities simply produced a windfall of evidence used in this subsequent prosecution. Serio v. United States, 5 Cir., 1953, 203 F.2d 576. Aikman's apprehension of Stirsman was consonant with several Indiana statutes[2] concerning

1. The same motor number as the Hayes vehicle.

2. E. g., 4 Burns' Ind.Stats.Annot. § 10–3011 (1942 repl. vol.), vehicle taking, use without permission, possession of stolen motor vehicle; 4 Burns' Ind.Stat.Annot. § 9–1024 governing arrests. See also 8 Burns' Ind.Stats.Annot., as follows:
Sec. 47–2506 provides:
"Any person who shall make, or cause to be made, any false statement, either in an application for certificate of title, or in any assignment thereof, or who, with intent to procure or pass title to a motor vehicle, semi-trailer or house car, which he knows or has reason to believe has been stolen, shall accept or transfer title or possession to the same, or who shall use, operate or occupy any motor vehicle which he knows or has reason to believe has been stolen, shall be guilty of a felony. This provision shall supplement and be in addition to any other penalties prescribed by law for the theft or unauthorized taking or use of any such vehicle. Any person, who shall alter or forge any certificate of title issued by the department pursuant to the provisions of this act, or any assignment thereof, or who shall hold or use any such certificate

stolen motor vehicles. Evidence traced on this record concerning Stirsman's activities among used car dealers; his abrupt departure, United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, 107, from the last one, coupled with the distinguishing [3] characteristics of this Cadillac, makes it abundantly clear that halting this automobile on U. S. 36 was not a random or indiscriminate sampling of motor vehicles from the population traveling on that public highway. Cf. Carroll v. U. S., 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Stirsman was traveling in the physical evidence bearing uncommon if not peculiar visible markings, with Aikman in pursuit of him. It would be unrealistic to insist, under the fluid state of affairs confronting Aikman when he reached the previously alerted troopers and Stirsman, that a search warrant should have first been obtained. Slight pressure on the gas pedal of the Cadillac would have effectively removed [4] both the evidence

or assignment, knowing the same to have been altered or forged, shall be guilty of a felony."

Sec. 47-2507 which provides:

"Any person who shall destroy, remove, cover, alter or deface, or cause to be removed, covered, altered or defaced, the engine number or other distinguishing number of any motor vehicle, semi-trailer or house car in this state, for any reason whatsoever, other than provided herein, or who shall give a wrong description in an application for the registration of, or certificate of title for, any motor vehicle, semi-trailer or house car, in this state, for the purpose of concealing or hiding the identity of such vehicle, shall be guilty of a felony."

Sec. 47-2508:

"Any person, who shall sell or offer for sale in this state a motor vehicle the original engine number of which has been destroyed, removed, altered, covered or defaced with the exception of homemade motorcycles and electrically propelled motor vehicles, shall be deemed guilty of a misdemeanor, and upon a second conviction, under this section, shall be guilty of a felony."

Sec. 47-2511:

"Any person, operating a motor vehicle, the engine number of which has been removed, defaced, destroyed, or obliterated, or so covered as to be concealed, and application has not been made to the department for permission to put on a new number shall be guilty of a misdemeanor. * * *"

Sec. 47-2714:

"(a) Every person, licensed under the provisions of this act, shall write his usual signature with pen and ink, in the space provided for that purpose on the certificate or license issued to him, immediately upon receipt of the same and no license or permit issued under the provisions of this act shall be valid until such certificate is so signed."

"(b) Every person holding a permit or license under the provisions of this act, shall have such permit or license in his immediate possession at all times when driving or operating a motor vehicle, and shall display the same upon demand of any court or any police officer, authorized by law to enforce motor vehicle regulations."

Sec. 9-1024 [2176]:

"All judicial officers, sheriffs, deputy sheriffs, coroners, constables, marshals, deputy marshals, police officers, watchmen and the conductors of all trains or cars carrying passenger or freight within this state, while on duty on their respective trains or cars, may arrest and detain any person found violating any law of this state, until a legal warrant can be obtained."

3. This aspect is also stressed by Stirsman's counsel, though for another purpose, viz.: "The evidence also reveals that the 'customizing' of a Cadillac automobile *is very unusual*, and it would be reasonable to believe that if a person was attempting to sell such a car when he knew it was stolen, he would repair the car to its original condition and would replace the Cadillac emblems." (Appellant's brief, pp. 40–41.) (Italics supplied.)

4. Mr. Justice Minton indicated an awareness of a practical approach to the strict rule when he delivered the majority opinion in United States v. Rabinowitz, 1950, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L. Ed. 653, by observing that:

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine,

and Stirsman from the scene. Cf. Sisk v. State, Ind., 1953, 110 N.E.2d 627, certiorari denied 346 U.S. 838, 74 S.Ct. 60; see also Mills v. United States, 1952, 90 U.S.App.D.C. 365, 196 F.2d 600.

■ But Stirsman points out that it matters not to him, whether federal or state officers illegally obtained this evidence since its impact on him remains the same regardless of which officer seized it. While this phase of his attack resembles a statement written by Mr. Justice Murphy in his separate concurring opinion in Lustig v. United States, 1949, 338 U.S. 74, 80, 69 S.Ct. 1372, 93 L.Ed. 1819, any further similitude fades on a reading of the Lustig facts. Because in the Lustig case, supra, United States secret service agent Greene brought local police into action and advised with them after he (Greene) had looked through the keyhole of the suspect hotel room. Thereafter, Greene remained at city police headquarters during the raid, he precipitated, by local officers who sent for Greene shortly after they invaded that hotel room. Greene himself acknowledged participation and it appears he sifted the evidence in the room as the search proceeded. Since the majority found this to be participation by federal officers they did not reach any question concerning a search entirely by State officers. We think that the statement contained in Mr. Justice Murphy's opinion is an observation resting solely on the peculiar facts of the Lustig case, supra, and that Stirsman cannot successfully expand it or persuasively argue a proposition like it, in this case since no federal officer was at or near the challenged search and seizure. It was not error to admit Aikman's testimony into evidence below. Scotti v. United States, 5 Cir., 1952, 193 F.2d 644; Lotto v. United States, 8th Cir., 1946, 157 F.2d

623; Taylor v. Hudspeth, 10 Cir., 1940, 113 F.2d 825.

Our system of government draws its vitality from the spirit which emanates from the words collected and arrayed in the Constitution. And a critical examination of this record, with particular emphasis on those constitutional safeguards to which this defendant is entitled, leads us to the conclusion that Stirsman's constitutional rights have been preserved. But, we limit our holding to the facts of this specific case because we are not here announcing a general proposition applicable to all search and seizure cases where the government may subsequently present evidence illegally seized by police officers on the state level, without demonstrable participation by federal officers.

Since we find no evidence, within the bounds of this record demonstrating direct or indirect participation, by federal officers, Gilbert v. United States, 10 Cir., 1947, 163 F.2d 325, it is unnecessary to discuss the cumulative effect of either Stirsman's failure to move for suppression of this evidence or his status so to do.

**II. Sufficiency of the Evidence.**

■ There is further evidence detailing Aikman's post-arrest conversation with Stirsman at state police headquarters. This aspect of Aikman's testimony also followed adverse rulings on objections interposed by defense counsel who contend that such evidentiary matters stemmed from Aikman's allegedly unlawful search and seizure. But we have disposed of that point. During Aikman's interrogation of Stirsman it appeared that the defendant paid $3600 to a Paul E. Gray, a man he met in a tavern in Phoenix City, Alabama, for the Cadillac which Stirsman was operating

considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they

have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."

at the time of his apprehension. Stirsman received an Alabama title, to that vehicle, from Gray who was paid with money that Stirsman won with "crooked dice." Stirsman did not know why he told Mr. Murphy (of Murphy Auto Sales) that he (Stirsman) purchased the Cadillac new, and he (defendant) had been working at the General Electric Company, Hamilton, Ohio.

During Aikman's questioning, the defendant said that his name was not Joseph David Brewer, but that he was George Stirsman from Evansville, Indiana. Stirsman said he was a gambler and could "get by without making a tax return in his own name" if he used the name Brewer. Stirsman also told Aikman of finding the identification cards, viz., social security, photostatic copy of the army discharge and Florida duplicate driver's license, in Jacksonville, Florida. Asked about the Ohio license plates, by Aikman, Stirsman replied that he bought these tags in the clerk's office at Hamilton, Ohio. His reason for this registration, was that a police officer had stopped him in Hamilton, and advised him to purchase Ohio plates if he was going to remain in Ohio. When Stirsman was apprehended he had an Indiana title certificate issued on February 5, for a Cadillac, motor number 526286065. Aikman impounded this vehicle and later released it to Continental Insurance Company.

Various government exhibits were admitted in evidence below. A copy of Dr. Hayes' original title certificate for his Cadillac, established its motor number to be 5262–37869. An Indiana certificate of title, issued to one Joseph D. Brewer for a 1952 Cadillac, bearing motor number 526286065. Copies of an Alabama Bill of Sale and Registration and an application for an Ohio certificate of title for a 1952 Cadillac coupe, motor number 526286065, all issued to Joseph D.

Brewer, were placed in evidence. Paul E. Gray was the name of the purported vendor to Brewer, but an agent of the F.B.I. was unable to locate Gray. The notary public failed to recall any Gray, Brewer or Stirsman when interviewed by that same agent. Joseph D. Brewer was named as the owner of a 1952 Cadillac, motor number 526286065 in an Ohio certificate of title, dated January 30, 1953. An automobile assessment, tax receipt and tag application,[5] dated January 8, 1953, issued by an Alabama tax assessor, named Brewer as owner of a 1952 Cadillac, motor number 526286065.

It was clearly established through testimony of an automobile salesman for Hackett Auto Sales, the owner of the Murphy Auto Sales, and his sales manager, and still another auto dealer, Concannon, that in the first week of February, 1953 the defendant using Brewer as his name, tried to interest each of them in buying a 1952 Cadillac coupe, bearing Ohio plates and from which the Cadillac emblems had been removed as hereinabove described. Under part I, of this opinion we have sufficiently narrated other salient points found in the testimony of this group of government witnesses and it is unnecessary to repeat such material. The defense rested at the conclusion of the government's case. The trial judge rightly refused to enter a judgment of acquittal pursuant to defendant's motion. United States v. Hack, 7 Cir., 1953, 205 F.2d 723, 726. And only a word need be said in reply to that tenuous argument urged by defendant concerning evidence bearing on his knowledge that he was in possession of a stolen motor vehicle or that he had transported such vehicle knowing it to have been stolen. Because our opinion in United States v. Gardner, 7 Cir., 1948, 171 F.2d 753, presented facts wholly different from those encountered in the instant appeal, it is not persuasive here,

---

5. This document (Government Ex. 4) shows that Brewer purchased the vehicle on January 8, 1953 from Paul E. Gray, 821 N.E. 12th Street, Atlanta, Georgia, and this application is signed by a Joseph D. Brewer. But the bill of sale (included in Govt.Ex. 3) showing Paul E. Gray as vendor, is dated and acknowledged on November 11, 1952, purportedly before a notary.

despite defendant's assertions to the contrary. There is, in our opinion, circumstantial evidence, contained in this record, from which a jury could properly draw inferences for deciding if Stirsman had the knowledge required by § 2312, supra. United States v. Angel, 7 Cir., 1953, 201 F.2d 531. We also think that the court below ruled correctly by denying defendant's motion for a new trial. United States v. Thayer, 7 Cir., 1954, 209 F.2d 534, 536. A canvass of this record satisfies us that no palpable error was committed below warranting reversal; nor do any of the other points raised on the defendant's behalf, require further elaboration and specific rejection in this opinion.

The judgment of the District Court is Affirmed.