Thomas Eugene **BARFIELD**,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15520.

United States Court of Appeals
Fifth Circuit.

Feb. 10, 1956.

J. Walton Hemphill, Wm. C. Bibb, Anniston, Ala., for appellant.

Fred S. Weaver, Asst. U. S. Atty., Frank M. Johnson, Jr., U. S. Atty., M. Lewis Gwaltney, Asst. U. S. Atty., Birmingham, Ala., on the brief, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

This is an appeal from a judgment of conviction for having transported a stolen automobile from Tallapoosa, Georgia, to Oxford, Alabama, knowing that the vehicle was stolen, 18 U.S.C.A. § 2312.

The Government's case was simply made. Ownership of the vehicle and the fact of its theft were proved by testimony of the owner and the attendant that it had been placed in the care of the hotel parking lot in New Orleans May 6, 1953, from which it was taken by an unidentified, unauthorized person shortly afterwards. Who took it or what happened to him was not disclosed. The automobile was recovered on May 11 near Oxford, Alabama, after a highway collision caused by Appellant's drunkenness. While at the scene of this wreck and under the influence of alcohol, Appellant told a highway patrolman that although he had been driving, the car belonged to another man pointed out on the scene. Upon the patrolman's inquiry of this other person, he stated that the car belonged to his sister who lived in New Orleans. Appellant was jailed and released a few days later when his mother paid his substantial fine for driving while intoxicated.

Up to this point the Government had not traced the automobile from New Orleans or accounted for its movements in the interim. It is safe to say that, so far as it was finally done, all of the informative leads and much of the factual detail had been supplied by Appellant in voluntary, extra-judicial statements. He was interviewed twice by FBI agents who testified. Interviewed first while still in the Alabama jail May 12, the next day, he stated that he had driven

the car from Tallapoosa, Georgia, to the point of accident in Alabama; he claimed to have been picked up as a hitchhiker near Villa Rica, Georgia, earlier that morning, May 11. His version this time was that on arrival at Tallapoosa, they stopped where they drank some beer and on departure, his host, the man apparently owning the car, whom he called Charles Smith, requested him to drive. He insisted that he had no knowledge that the car was stolen or that he had ever seen this man Smith until about 11:30 that morning, May 11. In the interview with the second FBI agent, a month or so later, the story was much longer. In that version, it was on Saturday, May 9, (not Monday, May 11) while at a point somewhere south of Atlanta, that this man Smith picked him up as a hitchhiker after which they rode around together, drank beer, stayed in the car all night, and the next day went out to visit two of his girl friends (sisters) near Marietta, and the following day started west—Smith to work in the oil fields—and Appellant headed, at least, to Birmingham. The second agent did not attempt to testify that Appellant made any statement that he personally had driven the car on any of these occasions, either in Georgia, in Alabama, or Georgia to Alabama.

Apparently starting with these leads, the Government verified that Appellant, an employee of Lockheed Aircraft near Marietta, had not reported for work May 4, 5, 6, 7, 8, and 11, and on the 12th (he was then in jail) he was terminated; and then produced one of the two girl friends who fixed the first time Appellant came to their house in the automobile with this Charles Smith as Sunday, May 10, Mother's Day. While she had seen him on Saturday, May 9, he had come and departed on foot. On both occasions, he was drinking or under the influence of alcohol.

Up to that point, the Government's case except for proof of ownership and theft of the automobile in New Orleans rested upon the extra-judicial admission of Appellant that he had been in and

had driven the car from Georgia to Alabama, and the explanations of his "possession" contained in such admissions were unsatisfactory because, again on his own statements, they were materially contradictory.

Appellant then produced his mother and the second of the two girl friends, as witnesses who, on the whole, only made matters worse for him. According to his mother, she had not seen him from the preceding Monday (May 4) until she paid his way out of the Alabama jail May 13. She had had much trouble with Appellant and his brother who was apparently AWOL from the army. She considered these women undesirable companions and was doing all she could to prevent their association. The girl friend verified her sister's story that Appellant had been at their home Saturday, May 9, but not until Sunday, May 10, had he shown up with the automobile and this Charles Smith. She had also seen him during the week on Tuesday or Wednesday and Friday, and readily admitted that she and her sister were running around with the two Barfield boys.

Of course, by this Appellant himself established that his first statement to the FBI was false and, at best, his second statement fixing his first contact with Charles Smith as May 9 was altogether inaccurate. But he had not only done that: he had demonstrated that he was apparently a shiftless, irresponsible, dissolute person whose life of drinking and bad companions had made him a heavy burden to his poor mother.

Almost perversely determined to talk himself into a conviction, Appellant then took the stand and in the course of his direct examination, first set the hitchhiking time as Saturday, May 9, then changed it to Sunday, May 10. All efforts to wring some explanation as to the basis of his contrary statements were fruitless. He elaborated, however, on the occurrence: after he was picked up at Villa Rica, Smith inquired of Appellant where he was going, identified himself as an oil field worker bound for Louisiana, and the two started drinking shortly, when Smith, learning Appellant was from Marietta, asked if he knew any girls. They turned around toward Atlanta, went to a bootlegger to buy more whiskey, then proceeded to get the two sisters. Smith, at this time, gave his name as King as he did not want to get in trouble with his wife. They left the girls about 2:00 o'clock Monday morning and since they had been drinking heavily, they pulled to the side of the road and spent the night in the car.

The new week (the term is used colloquially) started out Monday morning as the old one had ended—by drinking the balance of the whiskey in ignorance or defiance of scriptural wisdom, "woe unto them that rise up early in the morning that they may follow strong drink." (Isaiah V, 11). Proceeding toward Alabama, they arrived at Tallapoosa where they drank some beer, purchased wine and, on local inquiry, got the address of a bootlegger. At this point, on the record at least, the Appellant takes the wheel of the car for the first time and drives to the bootlegger establishment where their mission was unsuccessful. Leaving the bootleggers, Smith was driving and some time after they were on the main highway, Smith was so badly intoxicated that, fearing for his physical, if not moral, safety, Appellant demanded and obtained the right to drive. He proved no better as a driver than as a narrator or as a witness, and the collision which was his undoing soon occurred, 10 miles east of Oxford, Alabama.

As a witness, and independent of his extra-judicial admission, he testified only that he was driving at the time of collision and had taken over the wheel some time after they had gotten on the paved road out of Tallapoosa.[1]

---

[1] "Q. And you had taken the car over on the main, paved road? A. That is right and I did not see no sign that said Alabama State Line. I wouldn't say I did take it across the state line or that I did not."

■ The fact that the record (see footnote 1, supra) is not categorical that defendant drove the car across the state line is not decisive. We think the offense does not necessarily require the actual, physical driving *across* a state line by the accused. The offense is interstate transportation and, assuming the presence of the requisite knowledge and guilty purpose, any driving, whether wholly within the state of origin, state of destination, or from and to, if done as a substantial step in the furtherance of the intended interstate journey is, we think, within the act.[2]

We need look only to the trial testimony of Appellant to establish that he and Smith knew that the car was going to be driven from Georgia to the West, at least as far as Birmingham for Appellant, and the oil fields beyond for Smith.[3] Once the intended journey West got underway, any driving, no matter how circuitous or frequent the transitory diversions were, so long as it was a part of and would further the main journey, would amount to transportation under the Act. His acknowledged driving, therefore, from Tallapoosa to the bootlegger nearby, driving at some point on the main highway after leaving the bootlegger to the point of collision, his driving immediately before the accident even though wholly within Alabama, was all a part of the proposed and actual interstate travel.

■ This brings us then to the issue of Appellant's knowledge that such transportation was of a stolen vehicle. Possession itself, under proper circumstances, may be sufficient for the jury to draw the inference of guilty knowledge.[4] Considering that it was for the jury to accept or reject his explanation, the main theme of which was that he was a hitchhiker only, we hold that there was a basis for the inference here.

In the setting which the case portrays, the court's charge to the jury was inadequate and perhaps misleading. Relating, as they do, to this fundamental business of adequate proof of guilty knowledge and certainty of conviction on that alone, we consider them erroneous. The court charged the jury, in substance, that possession of recently stolen property raises a *presumption* of guilty knowledge.[5]

---

According to the record, it is about a mile or so on U.S. 78 from Tallapoosa to the Alabama-Georgia State Line.

2. The popular misconception that stopping the vehicle short of the state line, walking across it, and somehow resuming the driving in the adjoining state would insulate the act from Federal prosecution is as unfounded as similar notions in White Slave act situations. Cf. Mellor v. United States, 8 Cir., 160 F.2d 757; United States v. Jamerson, D.C.N.D. Iowa, 60 F.Supp. 281.

3. Of course not all subsequent driving would, of necessity, be interstate once such a purpose is known or formed, e. g., after first being picked up as hitchhiker (May 9 or 10) with the immediately acquired knowledge that Smith was headed West, the interstate journey was interrupted, and the driving was "local" from the moment they turned aside to pursue women and drink until sometime Monday, May 11, when they resumed the intended journey.

4. See Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Levi v. United States, 5 Cir., 71 F.2d 353, 354; Niederluecke v. United States, 8 Cir., 47 F.2d 888.

5. On the issue of defendant's knowledge that he was transporting a stolen automobile, the court charged: " * * * I am going to read you this from what the Appellate Court of this Federal Circuit has said about that and then comment on it. Our court has said this 'proof that the defendant', and this is to say Thomas Eugene Barfield, 'was in possession of property recently stolen raises a *presumption* of guilty knowledge which in the absence of explanation may warrant a conviction by the jury'.

"Now, gentlemen, I am not saying that the burden of proof shifts to the defendant to prove that he did not know it. It never shifts to the defendant. The burden is always on the United States to prove beyond a reasonable doubt that he did know that it was stolen. But you have a right to look at the explanation which the defendant gave in this case. If you are not satisfied with that explanation, if you do not believe it, and if you believe that the only ex-

This instruction could have led the jury to conclude that there should be a conviction if the defendant was in possession of the stolen car and his explanation was unsatisfactory or was not believed. The withdrawal of the charge, or a portion of it, in such a manner as to leave a doubt as to whether all or a part only was being withdrawn, and the iteration of a part only of the portion of the charge to which no exception had been made might have left the jury confused. We think too, that the use of the words "presumption" and "presume" in the instruction was misleading. What the court was dealing with was an inference rather than a presumption. The distinction is pointed out by Professor Jones who says:

> "In proper strictness, as indicated above, a 'presumption' is a mandatory deduction, while an 'inference' is a permissible deduction which the reason of the jury makes without an express direction of law to the effect." Jones, Commentaries on Evidence 2d Ed. § 27, Vol. I, p. 54.

We are aware that many authorities have referred to presumptions of law and to presumptions of fact, using the latter term as synonymous with the word "inference." [6] The use of the word "inference" has had the approval of this court in cases where like questions were presented as the one which is now before us.[7]

The problem presented by the use of the word "presumption" as the practical equivalent of "inference" was the subject of judicial comment by Judge Learned Hand. In a case where the offense charged was the theft of goods being transported interstate, Judge Hand observed that:

> "While we have held a number of times that the jury may find in the accused's unexplained possession of stolen goods enough evidence to convict, we have never intended to indicate that the jury should be directed that it was required by a rule of law to make this inference. In discussions among lawyers and judges of the difference between a permissible inference and a presumption, the terminology may be unimportant. But the jury may be misled by the word 'presumption'; and here it may have interpreted that word as far stronger than a permissible inference." United States v. Sherman 2 Cir., 1948, 171 F.2d 619, 624.

We think, too, that under the circumstances of this record there was a need for a clear and understandable instruction on the concept of "possession." Were it not so fundamental as we approach this case, we would not reverse alone because of it, since no adequate exception was taken and had it been, we are confident the deficiency would have been supplied. Only a passing reference, at one point, is made, "If you be-

---

planation that has been offered worthy of belief is that the car did cross the line, it had been stolen and that he was in *possession* of it, and you do not believe what the defendant said about it, you would have a right to *presume* that he knew it had been stolen, and that is what the law means and that is what the law says * * *."

Appellant's counsel excepted to the quoted excerpts from this Court's opinion and the Trial Judge's instruction that, "you have a right to *presume* that it was stolen and that he knew it was stolen." The Court then charged further: "That is withdrawn from the jury. The Court charges the jury that proof that a defendant was in possession of property recently stolen raises a *presumption* of guilty knowledge which in the absence of explanation may warrant conviction. * * * The Court: I said nothing about recent possession being proof or presumption that he *stole* the automobile but presumption of guilty knowledge. I confine it to that." [Emphasis supplied]

6. E. g., Jones Commentaries on Evidence 2d Ed. § 37, Vol. I, p. 71 et seq., and cf. Wigmore on Evidence 3rd Ed. § 2491, Vol. IX, p. 288 et seq.

7. Levi v. United States, 5 Cir., 1934, 71 F.2d 353; Janow v. United States, 5 Cir., 1944, 141 F.2d 1017; Yielding v. United States, 5 Cir., 1949, 173 F.2d 46.

lieve that * * * the car * * * had been stolen and that he was in *possession* of it." It is the possession which is crucial to the whole case. Here the jury had no guide as to what constituted possession. On both these points in a record of this character, we think the Trial Judge must take great pains to make certain that the jury understands what is required to be possession as well as those factors which they must take into account to determine whether there can be a rational inference.

The errors we have noticed are such as affect the substantial rights of the appellant. Fed.Rules Crim.Proc., rule 52(b), 18 U.S.C.A. The questions urged and not here mentioned have not been overlooked, but we do not find merit in them.

We therefore reverse and remand for new trial.

Reversed and remanded.

---

BROWN, Circuit Judge (concurring specially in part).

While my doubt on the sufficiency of the evidence here to make out guilty knowledge is great, it is not sufficient to override the weight of the contrary view of my brothers. Consequently, while I am not moved to dissent there are, to me, some disturbing things about these cases made on "presumptions" or "inferences" from assumed possession which may warrant some comments. It is likely that their value, if they have any, will come entirely from the freshness, at this stage, of my approach—a naivete which, I suppose, many judges undergo in the early days of their career as they react with considerable surprise to supposedly entrenched principles in fields beyond their former competence. But the newcomer probably has a contribution to make—that is the essence of the Inspector General approach in the military and, of course, it is always the stranger who sees the spot on the parlor rug.

This case points up the clash of tensions between the demands of an orderly, law-abiding society as it shapes its rules to combat lawbreakers, whose stealth and methods conceal action from conventional testimonial proofs, and the continuous necessity that such society must provide, and use, adequate safeguards against punishment of a citizen except upon a charge that a specific law has been violated and proof showing that it is the law, and not others that has been offended. Here, the Appellant was convicted and sentenced to a substantial imprisonment for transporting a stolen automobile from Tallapoosa, Georgia, to Oxford, Alabama, knowing that the vehicle was stolen, 18 U.S.C.A. § 2312. The decisive issue of knowledge that it was stolen rests wholly upon the traditional presumption that possession of stolen property charges one with knowledge of its stolen character and, in turn, the indispensable ingredient of possession rests almost altogether on the thin fact that Appellant, as a hitchhiker, was momentarily driving the car in the place of the one having general custody of the vehicle.

The court's opinion sketching in detail all of the revolting circumstances shows how unappealing must the accused have been in the eyes of the jury. I am convinced that, free as they were under the instructions of inference of guilty knowledge, the jury convicted Appellant, as he had convicted himself of being a liar, a social derelict, and an irresponsible drunkard. But he was charged not with these things indeed could not have been in that court. He was charged with transporting a vehicle knowing it to have been stolen. It is the serious task to make certain that he was convicted because he consciously transported a stolen vehicle, and not, disreputable as he paints himself to be, convicted because he is that sort of person.

But what is the proof that Appellant had knowledge that it was a stolen vehicle? On this phase, I certainly do not think that the record warrants any find-

ing that Appellant was the initial thief.[1] Not being the thief and the record lacking any testimonial evidence that he knew it was stolen, the conviction stands alone on the inference from possession.[2] The questions then are: Was there requisite possession? Was the inference reasonably warranted here?

Separation into two parts aid analysis, although the problem is likely a single one. Here, the possession, if it exists, must be the manual driving of the automobile. While we conclude that here the evidence is adequate to constitute possession, this is not to lay down any inexorable fiat. I think it important to emphasize that what we are saying is but another instance of the familiar but fundamental concept that a Federal Trial Judge at all times, in all stages of the trial, must make certain that a naked legal rule has factual relevance, and its application is surrounded with continuous safeguards. Whether the presumption can arise, whether it is permissible requires a determination that the total circumstances give rational assurance to the feeling that in the abundant experience of mankind, the conclusion sought to be implied has the intrinsic mark of probability and reasonably convincing weight. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Bollenbach v. United States,[3] 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350.

In this light, I think much more must be shown than mere driving of a vehicle by one temporarily in the car as a hitchhiker. First, it lacks the essential characteristics of possession.[4]

1. Many cases reason that possession of recently stolen property gives rise to a presumption that the possessor (1) knew it was stolen, and (2) was the thief. Prince v. United States, 6 Cir., 217 F. 2d 838; United States v. Stirsman, 7 Cir., 212 F.2d 900; Battaglia v. United States, 4 Cir., 205 F.2d 824; United States v. Guido, 2 Cir., 200 F.2d 105; Word v. United States, 10 Cir., 199 F. 2d 625; Morandy v. United States, 9 Cir., 170 F.2d 5; United States v. Washington, D.C.Md., 69 F.Supp. 143.

In my view the total circumstances must furnish a legitimate basis for such an inference, and where not plausible in the setting of a particular record, the rule of law cannot supply the needed proof. Here, the theft takes place in New Orleans over 500 miles away, and whatever Appellant's demonstrated moral shortcomings are, nothing permits me to believe that this boy ever got close to Louisiana. His trail was never a subtle or concealed one, and had he been there the FBI would undoubtedly have picked it up.

2. The bare rule, plain in terms, is universally recognized: Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 898, 40 L.Ed. 1090, "Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence." From this court, Levi v. United States, 5 Cir., 71 F.2d 353, 354, " * * * Possession of goods recently stolen justifies the inference that the possessor has guilty knowledge of the theft, in the absence of explanatory facts or circumstances consistent with his innocence. * * *"

See also: Dyer Act, 18 U.S.C.A. § 2311 et seq.: Niederluecke v. United States, 8 Cir., 47 F.2d 888; Bruce v. United States, 8 Cir., 73 F.2d 972; United States v. Di Carlo, 2 Cir., 64 F. 2d 15; and Drew v. United States, 2 Cir., 27 F.2d 715, but probably modified, see Court of Appeals opinion United States v. Bollenbach, 2 Cir., 147 F.2d 199, reversed, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350; and see cases footnote 1 supra.

Possession and Receipt Stolen Goods: Najjar v. United States, 5 Cir., 152 F. 2d 965; Janow v. United States, 5 Cir., 141 F.2d 1017.

Miscellaneous: Tractenberg v. United States, 53 App.D.C. 396, 293 F. 476; McNamara v. Henkel, 226 U.S. 520, 33 S. Ct. 146, 57 L.Ed. 330; Andrews v. United States, 5 Cir., 157 F.2d 723; Roberts v. United States, 5 Cir., 151 F.2d 664.

3. Prince v. United States, supra; Battaglia v. United States, supra; Morandy v. United States, supra; and United States v. Washington, supra, seem to doubt that Bollenbach would be significant. I think it, at least, challenges the supposed presumption and inference to the closest scrutiny.

4. 72 C.J.S., Possession, p. 233, " * * * denoting custody coupled with a right or interest of proprietorship; and 'possession' is inclusive of 'custody,' although

Driving can be and frequently is in the ordinary experience of men, merely the exercise of a temporary control over the physical movements of the vehicle. While the fact of driving by one *alone* in the vehicle might under many situations afford a basis for men to believe that such driver has, or is claiming to exercise, the right of dominion or full control over its disposition or use and thus has possession of it,[5] this does not hold, without more, for one temporarily driving for another then in the vehicle.

Nor, assuming that driving amounts to possession, do I think the transitory presence of a hitchhiker, without more gives him any reasonable basis in the light of human experience, to know that the vehicle has been stolen. If a hitchhiker merely by taking the wheel of his host's automobile becomes infused with knowledge of the full history and genealogy of the car, the same result would follow for garage attendants, filling station employees, or others temporarily driving it. No distinction could be based on the status of hitchhiker in contrast to a vehicle-service employee unless courts are to say that all hitchhikers, as a class, are suspect—a fact which ignores another contemporary social phenomenon. The fact simply is that momentarily driving an automobile in the apparent custody, ownership, and control of another does not, cannot, communicate knowledge.

If that is so, it is not, in my view, enough in the superintendence of the administration of Federal Criminal Law for courts to be content that one so accused will find his vindication in the explanation of his innocence, Wilson v. United States, supra. Indeed, this case now serves as a classic example of the risk to liberty when a person may stand convicted *unless* he brings forward a convincing explanation. This unfortunate social misfit is not alone in that large group of people who, no matter how innocent in fact of the specific charge, from a confused and disorderly past, a chronic inability to tell the truth or relate a convincing story, can never hope to make a satisfactory explanation. Before a conviction is finally sustained, I think we must somehow be able to persuade ourselves that, conceding he had made no satisfactory explanation, had indeed created doubts, confusion, and much distrust by his conflicting and loose versions—when all of this was behind and put to rest—it all added up somehow to allow the jury genuinely to conclude that Appellant was aware that a week before, the car had been stolen in New Orleans and did not belong, as Smith said, to him or his sister. But the fact that he may have been with

---

'custody' is not tantamount to 'possession'. In its full significance, 'possession' connotes domination or supremacy of authority. It implies a right and a fact; the right to enjoy annexed to the right of property, and the fact of the real detention of a thing which would be in the hands of a master or of another for him. It also implies a right to deal with property at pleasure and to exclude other persons from meddling with it. Possession involves power of control and intent to control, and all the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term 'possession.' * * *" See especially Pearson v. United States, 6 Cir., 192 F.2d 681, mere driving not possession of truck's cargo; mere sitting in truck not sufficient. United States v. O'Brien, 7 Cir., 174 F.2d 341; United States v. Hodorowicz, 7 Cir., 105 F.2d 218, 220,

"* * * possession is the exercise of such a power over a thing as attaches to lawful ownership * * *"; Toney v. United States, 62 App.D.C. 307, 67 F.2d 573, 574; United States v. Gardner, 7 Cir., 171 F.2d 753; Johnson v. United States, 8 Cir., 195 F.2d 673; see § 2513 footnotes 2, 5, Wigmore on Evidence; Camilla v. United States, 6 Cir., 207 F.2d 339; Caringella v. United States, 7 Cir., 78 F.2d 563.

5. Nor can this deficiency be remedied on the theory that Appellant acquires a "possession" from aiding and abetting Smith's possession. To be aiding and abetting possession, it must be knowing it to have been stolen. And assistance, *assuming* that to be so, cannot be turned into a vicarious possession to *prove* that as a *fact* on which to base the subsequent inference of knowledge. Johnson v. United States, supra; Pearson v. United States, supra.

Smith continuously May 9 and 10, or on the 10th and 11th, may have engaged in riotous conduct with him through those days or hours does not, without more, supply what driving alone is inadequate to imply. I entertain substantial doubt that either driving on May 11 or his association with Smith or the automobile on the days immediately preceding will be adequate to afford a rational conclusion that he knew the car was stolen.[6]

It is the classic application of the constitutional presumption of innocence, made here and by all careful trial judges, that the presumption of innocence attends the defendant at all times and at all stages—does not, and cannot, ever leave or abandon him.

This case has been my shock treatment into a sense of consciousness that where the crucial fact of (a) theft, (b) knowledge of stolen character, and (c) interstate transportation can all be established by "possession" this constitutional guarantee can become as sounding brass or a tinkling cymbal unless the judges, trial and appellate, are certain that possession really exists and furnishes a rational basis for the conclusions to be drawn.

---

6. Despite the sweeping language frequently used, I do not think courts will convict or sustain conviction where all that is available is the presumption and in-

ference. If so, a defendant could be convicted on simple proof (a) vehicle stolen in one state and, (b) defendant temporarily present in or near vehicle in second state, since the crucial issues of (1) theft, (2) transportation, (3) guilty knowledge would arise by inference from (b).

The following cases reflect action where, in totality, the application of inferences made something to be that which was not probable in fact: Johnson v. United States, supra; United

States v. Gardner, supra; Ezzard v. United States, 8 Cir., 7 F.2d 808; United States v. Ruffino, 2 Cir., 67 F.2d 440, cited and approved, Andrews v. United States, supra, and all others, including those cited elsewhere herein, show on careful examination some additional circumstances such as altered or forged title papers, motor numbers, grossly reduced sales price, use of assumed names, and, most significant, admitted or adequately proved possession of a real and demonstrable dominion over the car or thing.